**In re JIM–O–LETTE, INC. dba Hardee's Restaurants, Debtor.**

**Bankruptcy No. 291–20397–11.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

June 1, 1992.

Jeffrey S. Baird and J. Kent Schuster, Hinkle, Cox, Eaton, Coffield & Hensley, Amarillo, Tex., for Albert J. Mitchell, Jr.

William F. Davis, William F. Davis & Assoc., P.C., Albuquerque, N.M., and William L. Rivers, Amarillo, Tex., for debtor.

## MEMORANDUM OF OPINION ON MOTION TO AVOID LIEN

JOHN C. AKARD, Bankruptcy Judge.

Jim–O–Lette, Inc., the Debtor-in-Possession in the captioned Chapter 11 proceeding (Debtor), filed a Motion to Avoid a Judgment Lien held by Albert J. Mitchell, Jr.[1] The Debtor asserts that the lien constitutes a preference under § 547(b) of the Bankruptcy Code.[2] The court finds that Mr. Mitchell does not have an attorney's charg-

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(F) and (K). It appears that this matter should have been brought as an Adversary Proceeding under FED.R.BANKR.P. 7001(1) and (2). Mr. Mitchell did not object to this matter being handled as a contested matter under FED. R.BANKR.P. 9014, so the court will decide the matter in its present procedural posture. The respondent is referred to in this proceeding as Albert J. Mitchell, Jr. and as Albert J. Mitchell, Jr., P.A.

2. The Bankruptcy Code is 11 U.S.C. § 101 et seq. References to section numbers are references to sections in the Bankruptcy Code.

ing lien under New Mexico law and that the judgment lien may be avoided.

## STATUTES

Subject to certain exceptions not applicable to this case, a Debtor-in-Possession has all of the rights, powers and duties of a Trustee under the Bankruptcy Code. § 1107(a).[3]

The Trustee's (and thus the Debtor-in-Possession's) power to avoid preferences is contained in § 547(b) which reads as follows:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

## FACTS

Mr. Mitchell is a practicing attorney in Tucumcari, New Mexico. On December 23, 1988, the Debtor, through its duly authorized President, entered into a contract for Mr. Mitchell to provide legal services in connection with a proposed condemnation by the State of New Mexico of a portion of the Debtor's restaurant in Tucumcari, New Mexico. The restaurant, one of several operated by the Debtor under a Hardee's franchise, is located at a major intersection in downtown Tucumcari. The State of New Mexico proposed road changes which would take a portion of the Debtor's property and terminate access to it from one of the major streets. The attorney's employment agreement provided for a minimum fee of $2,500.00 and "10% of all compensation paid by the State in excess of $150,-000.00."

The State of New Mexico filed a condemnation suit against the Debtor and various other parties in Case No. CV–88–00135 in the Tenth Judicial District Court of Quay County, New Mexico (First Suit). In the Fall of 1988, the State paid $129,000.00 into the registry of the court pending a final award to the Debtor for the value of the property taken. Subsequently, those funds were withdrawn by court order and paid to the bank which held a lien on the property in question. Prior to trial on the condemnation matter, the State determined that it would not deny access to the Debtor's property. Thus, the Debtor's objectives in the condemnation suit were achieved.

The Debtor claimed that Mr. Mitchell was entitled only to the minimum $2,500.00 fee. Mr. Mitchell felt entitled to payment for securing the change in the State's plans. Because of the dispute, on August 14, 1989 Mr. Mitchell withdrew his representation of the Debtor in the condemnation suit. On the same date, Mr. Mitchell filed in the condemnation suit a notice of lien which read as follows:

> COMES NOW Albert J. Mitchell, Jr., P.A. and hereby asserts a claim against all proceeds derived from the above captioned matter by Jim–O–Lette, Inc., in-

---

3. Section 1107(a) states as follows:

Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensa-tion under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

cluding all damages paid by the State of New Mexico as well as any changes made by the State of New Mexico in the original construction drawings. The amount of this claim is $75,000.00.

When the parties could not agree on the fees due Mr. Mitchell, he filed suit against the Debtor in Cause No. 90–CV–00045 in state district court in Quay County, New Mexico (Second Suit). On July 22, 1991, after a jury trial, Mr. Mitchell was awarded a judgment for $105,000.00 plus interest and costs. An appeal was subsequently dismissed by agreement of the parties. On July 23, 1991, Mr. Mitchell filed a transcript of the judgment in the records of the County Clerk of Quay County, New Mexico. An amended transcript of judgment was filed in the County Clerk's records on September 9, 1991. The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on September 16, 1991.

## POSITIONS OF THE PARTIES

### Debtor

The Debtor asserts that the transcripts of judgment filed in Quay County, New Mexico on July 23, 1991 and September 9, 1991 constitute voidable preferences under § 547(b) because they related to pre-existing obligations and were filed within 90 days of the filing of the bankruptcy petition at a time when the Debtor is presumed to be insolvent. The Debtor notes that the judgment in the Second Suit made no mention of a lien and arose out of a suit separate from the condemnation suit in which Mr. Mitchell filed his notice of lien.

### Mitchell

Mr. Mitchell asserts that under New Mexico common law, an attorney's lien relates back to the commencement of employment and that, in any event, it relates back to the filing of the notice of lien in the First Suit on August 14, 1989. Mr. Mitchell argues that the lien attaches to any benefit received by the client as a result of the attorney's services and, therefore, Mr. Mitchell has a lien against the real estate occupied by the restaurant in Tucumcari, New Mexico.

## DISCUSSION

### Attorney's Charging Lien

The charging lien was developed in England as an equitable remedy.

[T]he English courts recognized a charging lien as a means for "protect[ing] attorneys against dishonest clients, who, utilizing the services of the attorney to establish and enable them to enforce their claims against their debtors, sought to evade payment for the services which enabled them to recover their demand."

*Sunwest Bank v. Miller's Performance Warehouse, Inc.,* 112 N.M. 492, 816 P.2d 1114, 1116 (1991) (citing *Prichard v. Fulmer,* 22 N.M. 134, 145, 159 P. 39, 42 (1916)). "A basic difference between the attorney's charging lien and the often-encountered attorney's retaining lien, is that in the former, possession of the object against which the lien is assessed is not essential." *Forrest Currell Lumber Co. v. Thomas,* 82 N.M. 789, 487 P.2d 491, 492 (1971).

■ Under New Mexico law, an attorney is entitled to recover fees and costs due him through a charging lien on the judgment or recovery in a particular suit. *Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d 371 (10th Cir.1962).

The attorneys' lien claimed in this case is a charging lien, and is an equitable right of an attorney to have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in that particular suit. The enforceability of the lien is sustained upon the theory that the fund or judgment is the product of the services and skill of the attorney. Such liens are recognized as valid by the law of New Mexico. It is necessary, however, to the existence of the lien that there be a valid contract for fees, either express or implied, entered into between the attorney and his client. The lien of an attorney for services rendered in an action relates back to, and takes effect from, the time of the commencement of the services, when it attaches to a judgment, it is superior to the claim of a

creditor in whose favor execution has been levied, or to a subsequent attachment, garnishment, or trustee process, or other liens on the money or property involved, subsequent in point of time. [Footnotes omitted.]

*Id.* at 373.

### Property To Which the Charging Lien Attaches

█ Mr. Mitchell states that as a result of his efforts in the First Suit, the State of New Mexico Highway Department modified the highway design in a manner that was very beneficial to the Debtor and that the reasonable fee for those services was determined in the Second Suit. He filed a notice of his charging lien in the First Suit and asserts that he has a lien on the Debtor's property from the commencement of his services in the First Suit or, at the very least, from the time he filed the lien on August 14, 1989.

In support of his position, Mr. Mitchell cites four cases, none of which involved the fixing of a lien on real estate. *Hanna Paint, supra,* and *Northern Pueblos Enters. v. Montgomery,* 98 N.M. 47, 644 P.2d 1036 (1982) both involved funds which were in the registry of the court. *Forrest Currell Lumber, supra,* and *Sunwest Bank, supra,* involved questions of the attorney's charging lien when there were offsetting judgments.

The only indication in these four cases that something other than property in the registry of the court or the money judgment being considered by the court might be subject to the charging lien is the statement quoted above from *Forrest Currell Lumber* that "possession of the object against which the lien is assessed is not essential." This statement does not give a clear indication under what circumstances, if any, the New Mexico courts would attach an attorney's charging lien to real estate. This court is obligated to follow applicable state law, but it would be inappropriate for this court to extend a New Mexico attorney's charging lien to real estate where the parties cite no cases in which New Mexico courts have applied such a lien to real

estate. Mr. Mitchell had the opportunity to present this question to the New Mexico courts in both suits. Apparently he did not do so. This court will not undertake to decide a novel issue of New Mexico law which should have been presented to the New Mexico courts.

### Judgment Lien

█ On July 23, 1991 and again on September 9, 1991, Mr. Mitchell filed a transcript of the judgment in the Second Suit in the records of the County Clerk of Quay County, New Mexico thereby establishing a lien on the Debtor's real property. The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on September 16, 1991 and now seeks to avoid the judgment liens under § 547(b). That section contains a number of requirements which the court will discuss:

1. That the transfer (in this case the fixing of the lien) was for the benefit of a creditor. The court finds that Mr. Mitchell is a creditor of the Debtor.

2. That the transfer was on account of an antecedent debt owed by the Debtor before the transfer was made. The lien was to secure the judgment awarded on July 22, 1991 in the Second Suit. The basis of the Second Suit was the services rendered in the First Suit. The court finds that the lien was for an antecedent debt.

3. That the transfer was made while the Debtor was insolvent. The Debtor is presumed to be insolvent during the 90 days immediately preceding the filing of the petition. § 547(f). The schedules filed in this proceeding by the Debtor indicate liabilities of $3,100,000 and assets of $2,750,000 indicating that the Debtor was insolvent at the time the petition was filed. Mr. Mitchell attributes substantial going concern value to the restaurant in Tucumcari, New Mexico and, therefore, asserts that the Debtor was not insolvent at the time the liens were filed. The court finds that the testimony presented by Mr. Mitchell was insufficient to

overcome the presumption of insolvency.

4. That the filing of the liens occurred within 90 days before the date of the filing of the petition. The court finds that the liens were filed within the 90–day time period.

5. That the filing of the liens enabled the creditor to receive more than the creditor would receive in a liquidation under Chapter 7 if the liens had not been filed. Mr. Mitchell does not contest this provision. At this point the court cannot speculate on the terms of a plan of reorganization which might be confirmed in this case. Typically a Chapter 11 plan does not provide full payment to the unsecured creditors and even when there is full payment, it is generally delayed and paid without interest. No evidence of the value of the Tucumcari restaurant was introduced at this hearing, nor was there any evidence of other liens on that property. For purposes of this matter, the court must assume that Mr. Mitchell's liens would be fully secured and that he would therefore be entitled to post-petition interest, something which is generally not paid to creditors in a Chapter 7 liquidation.[4] Therefore, it appears that the asserted liens would give Mr. Mitchell more than he would receive as an unsecured creditor in a Chapter 7 liquidation.

### Statutory Lien

As an alternate ground of recovery, Mr. Mitchell asked the court to infer a statutory attorney's lien. A number of states have such liens and Mr. Mitchell suggested that this court should find such a lien exists for his benefit even though the New Mexico legislature has not enacted a statutory attorney's lien. He then asserted that the attorney's lien, when perfected, is

not avoidable under § 545. The enactment of an attorney's lien statute for the benefit of New Mexico attorneys is solely within the province of the New Mexico Legislature. This court has no authority to assume the existence of a statute where none exists.

### CONCLUSION

The court concludes that under New Mexico law, Mr. Mitchell does not have an attorney's charging lien on the Tucumcari restaurant. Mr. Mitchell's judgment lien against the Tucumcari restaurant is subject to being set aside under § 547 and will be set aside upon the effective date of a confirmed plan of reorganization in these proceedings or upon the conversion of these proceedings to a liquidation under Chapter 7 of the Bankruptcy Code. If these proceedings are dismissed, the liens will remain in full force and effect.

ORDER ACCORDINGLY.[5]

---

**4.** If the value of the property and other liens on the property are such that Mr. Mitchell's lien would only be partially secured, he would, under § 506, have two claims: a secured claim to the extent of the value of his collateral; and an unsecured claim for the balance. In a Chapter 7 liquidation he would be entitled to foreclose on the real estate, a situation which would put

him in a better position than other unsecured creditors in the Chapter 7.

**5.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014. This Memorandum will be published.