891 P.2d 546

**Tommy FORD, Plaintiff–Appellee,**

**v.**

**NEW MEXICO DEPARTMENT OF PUBLIC SAFETY, Defendant–Appellant.**

**No. 15336.**

Court of Appeals of New Mexico.

Nov. 30, 1994.

Dick A. Blenden, Phil Blenden, Blenden Law Firm, Carlsbad, Ernest L. Carroll, Mary Lynn Bogle, Losee, Carson, Haas & Carroll, P.A., Artesia, for plaintiff-appellee.

Janet E. Clow, Carolyn R. Glick, White, Koch, Kelly & McCarthy, P.A., Santa Fe, for defendant-appellant.

*OPINION*

HARTZ, Judge.

This appeal raises novel issues in the law of judgments. One theme permeating the law of judgments is that a litigant is ordinarily not entitled to more than one fair bite at the apple. This theme finds expression in two doctrines familiar to all litigators. The doctrine of claim preclusion (a more descriptive term for what has often been denominated res judicata) prevents a party from repeatedly bringing the same cause of action against the same person. *See Three Rivers Land Co. v. Maddoux,* 98 N.M. 690, 694–96, 652 P.2d 240, 244–46 (1982), *overruled on other grounds by Universal Life Church v. Coxon,* 105 N.M. 57, 728 P.2d 467

(1986). The doctrine of issue preclusion (a more descriptive term for what has often been denominated collateral estoppel) prevents a party from relitigating "ultimate facts or issues actually and necessarily decided [adversely to the party] in a prior suit." *Silva v. State,* 106 N.M. 472, 474, 745 P.2d 380, 382 (1987).

The question here is whether Plaintiff's complaint in the suit before us is barred by his loss in previous litigation. The defendants in the two lawsuits are different. Among the features of this case that create issues of first impression in New Mexico are (1) the first lawsuit was in federal court, (2) the defendant in this lawsuit is immune from suit for damages in federal court, and (3) the predicate for the claim against the defendant is vicarious responsibility for the actions of those who were defendants in the federal lawsuit. Applying Restatement (Second) of Judgments Section 51 (1980) (the Restatement), which addresses claim preclusion in the context of vicarious responsibility, we hold that Plaintiff's claim against the defendant in this case is barred by the adverse judgment in the federal lawsuit.

## I. PROCEDURAL HISTORY

Tommy Ford (Plaintiff) was employed by the New Mexico Department of Public Safety (the Department) as a state police officer. After a Department employee investigated allegations of misconduct by Plaintiff, the Department notified him that he would be suspended for thirty working days. Plaintiff appealed the suspension to a disciplinary hearing panel, which affirmed the suspension and recommended that he be transferred to another post. After a further review requested by Plaintiff, the Department informed him that he would be suspended for thirty working days and transferred from Artesia to Farmington. Rather than acquiescing in the transfer, Plaintiff retired.

Plaintiff then filed suit in state court against the Department and the following individuals: John Denko, Jr., Chief of the New Mexico State Police; Richard C. de Baca, Secretary of the Department; Captain Tommy Cantou; and Lieutenant Louie Medina. (The individuals will be referred to col-

lectively as the federal defendants.) Plaintiff sought damages under the federal civil rights statutes. His complaint alleged that the defendants had (1) violated his right to equal protection by targeting him for punishment, (2) violated his right to counsel during the disciplinary process, (3) violated his right to free speech by issuing a vague order restricting his right to contact witnesses until the Department's internal investigation had been completed, (4) violated his right to petition the government by retaliating against him (ordering his transfer) for exercising his right to appeal the proposed discipline, (5) failed to provide procedural due process during the administrative appeals process, and (6) violated his right to substantive due process by improperly depriving him of income and benefits.

The defendants removed the lawsuit to the United States District Court for New Mexico. Plaintiff then filed an amended complaint. On motion by the Department, the federal court dismissed it as a party. The court also dismissed some of the claims against the remaining defendants, and other claims were not pressed by Plaintiff. Consequently, the jury was instructed only on the claims of retaliation and denial of procedural due process. The jury returned a verdict in favor of the federal defendants. Plaintiff initially appealed the judgment but then abandoned the appeal.

Following the unsuccessful federal litigation Plaintiff filed suit in state court against the Department only. The complaint alleges that all claims are proper pursuant to the New Mexico Tort Claims Act, in particular NMSA 1978, Section 41–4–12 (Repl. Pamp.1989), which waives immunity from liability for certain acts by law enforcement officers. The misconduct alleged in the state complaint is virtually identical to that alleged in the amended complaint in federal court. The Department moved to dismiss the lawsuit, maintaining that (1) the claims were barred by the prior federal court adjudication, (2) the claims were barred under NMSA 1978, Section 41–4–21 (Repl.Pamp.1989), of the Tort Claims Act, which provides that the Act shall not affect personnel laws, and (3) immunity was not waived under Section 41–

4–12 because none of the Department's employees were acting as law enforcement officers in performing the acts of which Plaintiff complains.

The district court entered an order denying the Department's motion to dismiss but included in the order the language required by NMSA 1978, Section 39–3–4 (Repl. Pamp.1991), to permit the Department to apply to this Court for leave to file an interlocutory appeal. We granted the application and now reverse, holding that the federal court judgment bars the present action. Because we rest reversal on this ground, we need not address the Department's other contentions.

## II. DISCUSSION

### A. Claim Preclusion and Vicarious Responsibility

■ Recognition of vicarious responsibility ordinarily favors the plaintiff. When a third party is vicariously responsible for the actions of another, the injured person is not restricted to seeking redress from the person who is primarily responsible. One clear advantage to the plaintiff is that the person vicariously responsible may be able to pay a judgment that is beyond the resources of the one who is primarily responsible. Recognition of vicarious responsibility may also provide the plaintiff with procedural advantages, enabling the plaintiff to select a more attractive forum for litigation or permitting the plaintiff to commence litigation before knowing the identities of those who bear primary responsibility (as when the tortfeasors are unidentified employees of a known business).

Yet, there is no sound reason to include among these advantages the right to litigate a claim against one who is vicariously responsible after receiving an adverse judgment in litigating the underlying claim against the person bearing primary responsibility. After noting that the claims against the primary obligor and the person vicariously responsible are "in important respects separate claims," comment b to Restatement Section 51 states:

In an important sense, however, there is only a single claim. The same loss is

involved, usually the same measure of damages, and the same or nearly identical issues of fact and law. The substantive legal basis for vicarious responsibility rests largely on the notion that the injured person should have the additional security for recovery of his loss that is represented in imposition of liability on a person other than the primary obligor. The optional additional security thus afforded by rules of vicarious responsibility should not, however, afford the injured person a further option to litigate successively the issues upon which his claim to redress is founded.

 Courts are committed to providing every litigant a full and fair opportunity to sue or defend. But once a judgment is rendered after such an opportunity, justice requires that there be an end to the litigation. In the context of vicarious responsibility, Restatement Section 51(1) expresses the law as follows:

If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other. ·

(1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action. extinguishes any claim he has against the other person responsible for the conduct unless:

(a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or

(b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.[1]

Section 51 reflects federal law. *See, e.g., Bigelow v. Old Dominion Copper Mining & Smelting Co.,* 225 U.S. 111, 127–28, 32 S.Ct. 641, 642–43, 56 L.Ed. 1009 (1912); *Lober v. Moore,* 417 F.2d 714, 717–18 (D.C.Cir.1969); *Russell v. SunAmerica Sec.,* 962 F.2d 1169, 1174–75 (5th Cir.1992); *Citibank v. Data*

*Lease Fin. Corp.,* 904 F.2d 1498, 1502–03 (11th Cir.1990); *Tamari v. Bache & Co.,* 637 F.Supp. 1333, 1341 (N.D.Ill.1986); *Davis Wright & Jones v. National Union Fire Ins. Co.,* 709 F.Supp. 196, 202 (W.D.Wash.1989), *aff'd,* 897 F.2d 1021 (9th Cir.1990). Given this authority and the sound policy underlying it, we recognize Section 51 as accurately expressing New Mexico law. In any event, we should apply Section 51 to the case before us because ordinarily federal law governs the effect of a federal judgment on a state court proceeding. *See Edwards v. First Fed. Sav. & Loan Ass'n,* 102 N.M. 396, 402–04, 696 P.2d 484, 490–92 (Ct.App.1985); Restatement § 87; *cf. Brown v. St. Louis Police Dep't,* 691 F.2d 393, 395 (8th Cir.1982) (applying state law to determine preclusive effect in federal court of prior state judgment), *cert. denied,* 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983).

**B. Application to This Case**

Under Section 51(1) the Department should prevail if four requirements are satisfied: (1) its liability under the state complaint is predicated on vicarious responsibility for the conduct of the federal defendants, (2) the federal judgment precludes a state court claim by Plaintiff against the federal defendants for that conduct, (3) the state claim is based on grounds that Plaintiff could have asserted against the federal defendants in the federal litigation, and (4) the federal judgment was not based on a defense personal to the federal defendants. We begin with the third requirement, which paraphrases Section 51(1)(a).

**1. Applicability of Section 51(1)(a)**

Section 51(1)(a) states that there is no claim preclusion if "[t]he claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action." Plaintiff contends that this language applies here because the Department was immune from suit for damages in federal court. (In fact, this immunity was the ground for the federal court's dismissal of the Department from the suit after the suit was removed to federal court.)

---

1. Paragraphs (2), (3), and (4) of Section 51 are not relevant to this action.

Plaintiff misreads the language of Section 51(1)(a) as saying that there is no preclusion when the second claim is based upon a ground that "could not have been asserted [in the first action] against the [person who is the] defendant in the [second] action." The source of Plaintiff's error is his failure to recognize that the Restatement refers to the person sued in the second action as "the other person responsible for the conduct," not as "the defendant." The "defendant" is the person who was already sued in the first action. Thus, Section 51(1)(a) means that there is no preclusion when the second claim is based upon a ground that "could not have been asserted [in the first action] against the [person who was the] defendant in the first action."

This reading of subparagraph (1)(a) is not only compelled by the language of Section 51, it is also consistent with the rationale. As long as the plaintiff had an opportunity to litigate the ground in the first action, the plaintiff's loss in the first action should bar a second opportunity to litigate that ground. On the other hand, a plaintiff should be permitted to litigate in the second action a ground that the plaintiff did not have an opportunity to assert in the first litigation.

Consequently, Plaintiff cannot dispose of Section 51 by simply pointing out that he could not sue the Department for damages in federal court. Section 51(1)(a) is of no aid to him if every ground for the claim against the Department could have been raised in federal court against the federal defendants. We now address whether that requirement is satisfied.

Plaintiff argues that Section 51(1)(a) protects him against claim preclusion because the grounds of his state court action could not have been presented in federal court. He contends that he could sue the federal defendants in federal court only in their *individual* capacities. Yet, he argues, their liability under the Tort Claims Act (and hence the Department's vicarious liability) is based on the conduct of the federal defendants in their *official* capacities. He concludes that because liability in the state-court action rests on a ground (namely, conduct in an official capacity) that could not have been

raised in federal court, the federal judgment can have no preclusive effect on the state action.

We disagree. Plaintiff's argument is based on a misconception regarding the distinction made by the United States Supreme Court between a suit against a public official in an *official* capacity and a suit against the official in an *individual* capacity. The Supreme Court has ruled that a suit for damages against a state official in his or her official capacity is essentially a suit for damages against the state itself and therefore is barred by the Eleventh Amendment to the United States Constitution. *See Kentucky v. Graham,* 473 U.S. 159, 169–70, 105 S.Ct. 3099, 3107–08, 87 L.Ed.2d 114 (1985). It has also held that a suit for damages under the federal Civil Rights Act, 42 U.S.C. § 1983, cannot be brought against a state official in his or her official capacity, because such a suit can be brought only against a "person," and a state official being sued in his or her official capacity is not a "person" within the statutory meaning of the word. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70–71, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989). Hence, Plaintiff is correct that he could not have sued the federal defendants in federal court in their official capacities.

But it is incorrect to say that a suit against the federal defendants in state court under the Tort Claims Act would be a suit against them in their official capacities. Although the alleged misconduct of the federal defendants occurred in the course and scope of their official duties, the distinction between a state official in an official capacity and a state official in an individual capacity does not turn on the type of conduct involved. Rather, it turns on procedural considerations and the relief sought.

The United States Supreme Court visited this issue in *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Hafer was the auditor general of Pennsylvania. She fired Melo, who sued her for damages under 42 U.S.C. § 1983. The federal district court dismissed the claim on the ground that Hafer was not subject to liability for decisions made in her official capacity. *Id.* at 23–25, 112 S.Ct. at 361. The Supreme Court,

however, held that state officers may be personally liable for damages under Section 1983 based upon their official conduct. The Court wrote:

In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Court sought to eliminate lingering confusion about the distinction between personal- and official-capacity suits. We emphasized that official-capacity suits " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Id.*, at 165, 105 S.Ct., at 3104 (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978)). A suit against a state official in her official capacity therefore should be treated as a suit against the State. 473 U.S., at 166, 105 S.Ct., at 3105. Indeed, when an official sued in this capacity in federal court dies or leaves office, her successor automatically assumes her role in the litigation.

Explaining the statement in *Will* that state officials "acting in their official capacities" are not "persons" under § 1983, *Will*, 491 U.S. at 71, 109 S.Ct. at 2312, the *Hafer* Court said, "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." 502 U.S. at 26, 112 S.Ct. at 362. The Court also ruled that the Eleventh Amendment did not bar the suit in federal court. *Id.* at 29–31, 112 S.Ct. at 364–65. *See generally Hardin v. Straub*, 954 F.2d 1193, 1198–1201 (6th Cir.1992) (discussing distinction between individual capacity and official capacity in context of Section 1983 and Eleventh Amendment).

Thus, the nature of the liability of a state official sued in federal court under 42 U.S.C. § 1983 is essentially the same as the nature of the liability of the official in a suit in state court under the New Mexico Tort Claims Act. Both are sued for misconduct in office.

In both, the defendant is the individual, not the office. After all, when a state official sued under the Tort Claims Act leaves office, the official's successor in office is not substituted as the defendant in the litigation.

We see no obstacle under federal law, including the Eleventh Amendment, to a suit under the New Mexico Tort Claims Act in federal court against public officers and employees.[2] The grounds of liability raised against the Department in the state action could have been raised against the federal defendants in the federal action. Therefore, Plaintiff cannot escape preclusion under Section 51(1)(a).

We now address the remaining requirements of Section 51(1).

## 2. Vicarious–Responsibility Basis of Claim Against Department

■ Requirement (1)—that the Department's liability under the state complaint be predicated on vicarious responsibility for the conduct of the federal defendants—is clearly satisfied. The face of the state court complaint establishes that the alleged liability of the. Department rests on vicarious responsibility for the conduct of its employees. Paragraph 40 states: "All claims set forth herein are proper claims against the [Department] pursuant to Section 41–4–12, N.M.S.A. (1989 Repl.Pamp.), of the New Mexico Tort Claims Act, inasmuch as the State has waived immunity for all claims set forth herein." Under Section 41–4–12 immunity is waived only for certain types of liability of "law enforcement officers." The Department is not a "law enforcement officer." *See* NMSA 1978, § 41–4–3(D) (Repl.Pamp.1989). Therefore, "Section 41–4–12 does not waive immunity for claims based on [its] primary liability." *California First Bank v. State*, 111 N.M. 64, 71, 801 P.2d 646, 653 (1990); *see id.* at 67–68, 801 P.2d at 649–50. The Department's immunity is waived by Section 41–4–12 only to the extent that it is liable under principles of

---

**2.** We note that the New Mexico Tort Claims Act purports to limit jurisdiction under the Act to state district courts. NMSA 1978, Section 41–4–18(A) (Repl.Pamp.1989). Ford, however, does not rely on that provision, perhaps because of the holding in *Wojciechowski v. Harriman*, 607

F.Supp. 631 (D.N.M.1985), that this provision cannot preclude federal courts from exercising jurisdiction over claims under the Act except to the extent that it indicates non-waiver of state's rights under the Eleventh Amendment.

respondeat superior. *See id.* at 68–70, 801 P.2d at 650–52; *Silva,* 106 N.M. at 477, 745 P.2d at 385; *Abalos v. Bernalillo County Dist. Attorney's Office,* 105 N.M. 554, 558–59, 734 P.2d 794, 798–99 (Ct.App.1987).

█ To the extent that the Department's alleged liability rests solely on the conduct of employees other than the federal defendants, the Department is not protected by Restatement Section 51(1). An employee of the Department who was not sued in federal court would not be protected by the federal court judgment against liability in the state litigation (except to the extent that the employee could benefit from issue preclusion), and therefore the Department might be subject to vicarious liability based on the actions of that employee. But we do not read the complaint to suggest that the Department's liability is predicated on the conduct of anyone other than the federal defendants, and Plaintiff makes no claim on appeal that the Department's liability is based on the conduct of anyone other than the federal defendants.

Despite the language in Paragraph 40 of his complaint, Plaintiff's answer brief on appeal suggests a second source of liability of the Department. He contends that his claims of violation of his federal and state constitutional rights may be maintained without regard to the provisions of the Tort Claims Act. He relies on *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which implied a cause of action for damages against federal agents who violated the United States Constitution.

There are several reasons why this argument will not help Plaintiff. First, *Bivens* recognized suits against federal agents, not federal agencies. Earlier this year a unanimous United States Supreme Court held that a *Bivens* cause of action should not be implied directly against a federal agency. *Federal Deposit Ins. Corp. v. Meyer,* — U.S. ——, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). This authority raises serious doubts whether a *Bivens* action against a state agency would be appropriate.

█ In addition, Plaintiff must confront the provision of the state Tort Claims Act that grants public employees immunity from damages in tort actions except insofar as immunity is waived by the Tort Claims Act itself. NMSA 1978, § 41–4–4(A) (Repl. Pamp.1989). If the state legislature deems it in the public interest not to permit damage actions under state law for violations of state or federal constitutional rights, there appears to be no obstacle to a statute enacting that immunity. We have previously held that absent a waiver of immunity under the Tort Claims Act, a person may not sue the state for damages for violation of a state constitutional right. *Begay v. State,* 104 N.M. 483, 488, 723 P.2d 252, 257 (Ct.App.1985) (alleged violation of Article II, Section 11, which grants freedom of religion). Although the legislature cannot eliminate or limit a constitutional right, it need not provide a damage remedy for a violation of that right. (Of course, the federal Civil Rights Act provides a federal remedy for violations by state and local officials of federal constitutional rights. 42 U.S.C. § 1983.) Insofar as Plaintiff relies on *Wells v. County of Valencia,* 98 N.M. 3, 644 P.2d 517 (1982), as support for the contention that the state Tort Claims Act could not override his right to bring a *Bivens*-type action, such reliance is misplaced. All *Wells* said was that the New Mexico legislature could not deny the right to bring a claim authorized by federal law, such as 42 U.S.C. § 1983. *Id.* at 6–7, 644 P.2d at 520–21.

Finally, even if Plaintiff could bring a *Bivens*-type action against the Department, the Department's liability would necessarily be vicarious liability for violations by Department officers and employees. Plaintiff's argument under *Bivens* does not alter our conclusion that his state court complaint against the Department is founded entirely on vicarious responsibility for the conduct of the federal defendants.

### 3. Claim Preclusion Against the Federal Defendants

The second requirement that must be satisfied under Section 52(1) is that the federal judgment would bar a state court claim against the federal defendants for the con-

duct that forms the basis of the claim against the Department. It is therefore necessary to determine what claims against the federal defendants would be precluded by the federal judgment. Federal law and New Mexico law do not appear to diverge on this issue; both generally find the Restatement to be persuasive. *See, e.g., Poe v. John Deere Co.*, 695 F.2d 1103, 1106 (8th Cir.1982); *Petromanagement Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329, 1335–36 (10th Cir. 1988); *Three Rivers Land Co.*, 98 N.M. at 695–96, 652 P.2d at 245–46.

Restatement Section 24 provides:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19),[3] the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Comment c explains:

*Transaction may be single despite different harms, substantive theories, measures or kinds of relief.* A single transaction ordinarily gives rise to but one claim by one person against another. When a person by one act takes a number of chattels belonging to another, the transaction is single, and judgment for the value of some of the goods exhausts the claim and precludes the injured party from maintaining one action for the remainder. In the more complicated case where one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one transaction; a

judgment based on the act usually prevents the person from maintaining another action for any of the harms not sued for in the first action....

That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.

In line with this approach, federal decisions in employment cases have determined under both federal and state law of judgments that where the thrust of both lawsuits is whether the plaintiff was wrongfully discharged, an adverse judgment in the first suit bars the second. *See, e.g., Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir.) (where all claims in both lawsuits were based on the termination of plaintiff's employment, they were identical causes of action for res judicata purposes), *cert. denied*, 502 U.S. 816, 112 S.Ct. 69, 116 L.Ed.2d 44 (1991); *Gregory v. Chehi*, 843 F.2d 111, 116–19 (3d Cir.1988) (applying Pennsylvania law; discharged officer brought federal civil rights claim after state court had affirmed dismissal of state challenge; dismissal of federal claim affirmed); *Hogue v. Royse City*, 939 F.2d 1249, 1252–54 (5th Cir.1991) (applying Texas law; police officer's discharge gives rise to a single cause of action encompassing several theories for recovery); *Miller v. United States Postal Serv.*, 825 F.2d 62, 64 (5th Cir.1987) (plaintiff filed sex discrimination suit and lost; a later handicap discrimination suit was barred by res judicata because it sought to remedy the same wrong, the allegedly discriminatory dismissal, as the earlier action); *Pirela v. Village of N. Aurora*, 935 F.2d 909, 912 (7th Cir.) (applying Illinois law; where plaintiff was discharged, appealed discharge to district court, lost, and then filed federal civil rights lawsuit, the federal suit was barred because both cases

---

**3.** Section 18 addresses judgments in favor of plaintiffs. Section 19 states: "A valid and personal judgment rendered in favor of the defen-dant bars another action by the plaintiff on the same claim."

arose out of same operative facts—plaintiff's misconduct and the Department's procedures relating to suspension and termination), *cert. denied*, 502 U.S. 983, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991); *Poe*, 695 F.2d at 1106 (federal lawsuit was based on alleged race discrimination in discharge; subsequent state court suit alleged claims in tort; thrust of both cases was whether plaintiff was wrongfully discharged, so both cases presented the same claim and state court suit that had been removed to federal court was barred); *St. Louis Police Dep't*, 691 F.2d at 396 (plaintiff was discharged, pursued administrative remedies, appealed to district court, lost, and then filed federal lawsuit alleging racial basis for discharge; court, applying Missouri law, held that both actions challenged plaintiff's dismissal and sought reinstatement, and in both cases the central issue was the reason for the dismissal; thus, plaintiff was raising the same claim under a different theory of recovery and res judicata applied).

In the present case, the same operative facts form the basis of both Plaintiff's state court complaint and his federal amended complaint. The allegations in the state complaint are almost identical to those in the federal complaint. Also, the thrust of both actions is the asserted wrongfulness of Plaintiff's suspension and of the investigation and procedures utilized to suspend him. The same alleged wrongs are sought to be redressed in both lawsuits.

Plaintiff argues that the claims in his state court lawsuit are different from the claims he actually litigated in federal court and therefore are not barred. While it is true that for purposes of issue preclusion, an issue must be actually litigated for the determination to be binding in a subsequent action, *see Silva*, 106 N.M. at 474, 745 P.2d at 382, the same is not true when claim preclusion is the applicable doctrine. Claim preclusion does not depend upon whether the claims arising out of the same transaction were actually asserted in the original action, as long as they could have been asserted. *See Kale*, 924 F.2d at 1164; *Miller*, 825 F.2d at 64 (res judicata bars all claims that were or could have been advanced in support of the cause of action, not only those that were

actually adjudicated); *Poe*, 695 F.2d at 1105 (final judgment in earlier case precludes relitigation of a cause of action on any grounds that could have been raised in the prior action).

The question, then, is not what grounds for liability were actually asserted and finally determined in the federal court lawsuit, but what claims Plaintiff could have asserted against the federal defendants. Because Plaintiff could have included in his federal suit any claims against the federal defendants arising out of the conduct described in the state complaint, Plaintiff would be barred from suit against the federal defendants in state court on any claims arising from such conduct. Consequently, requirement (2) is satisfied.

### 4. Defenses Personal to the Federal Defendants

The fourth requirement is not at issue in this appeal. Plaintiff has not suggested that the adverse judgment in federal court was based in any way on a defense that would not be available to the Department in this suit.

Thus, the four requirements of Section 51(1) are satisfied. The law of judgments precludes the state court action against the Department. To the extent that Plaintiff contends that this conclusion is contrary to our Supreme Court's decision in *Wells*, we disagree. *Wells* resolved the following question certified by the federal district court:

> Does the New Mexico Tort Claims Act ... prohibit a plaintiff from bringing an action for damages under the New Mexico Tort Claims Act against a governmental entity or public employee where the plaintiff also pursues, by reason of the same occurrence or chain of events, an action against the same entity or employee pursuant to [the] Federal Civil Rights Act ...?

98 N.M. at 5, 644 P.2d at 519. In the course of giving an affirmative answer to the question the Court wrote: "[S]ince Section 1983 is supplementary to state remedies, a plaintiff can first file suit in state court under the Tort Claims Act, obtain a favorable judgment, and then proceed to federal court under Section 1983 for deprivation of constitu-

tional rights." *Id.* at 7, 644 P.2d at 521. The Court had no occasion to consider what would happen if the plaintiff sued under the Tort Claims Act in one court and under the federal Civil Rights Act in another court and the first judgment was adverse to the plaintiff. The opinion simply does not address the law of judgments. *See Poe,* 695 F.2d at 1103 (plaintiff filed state court lawsuit alleging state law torts while federal suit was pending; once federal suit was decided, the result was res judicata as to state law claims).

## III. CONCLUSION

[redacted] The Department's liability in this case is based solely on vicarious responsibility for the acts of the federal defendants. The federal judgment precluded further suit against the federal defendants for those acts. The claims raised in the state case could have been raised against the federal defendants in the federal case. The federal judgment was not based on a defense unavailable to the Department. Following Restatement Section 51, we therefore hold that the Department is protected by claim preclusion. Accordingly, we reverse the decision of the district court and remand for dismissal of Plaintiff's complaint.

**IT IS SO ORDERED.**

MINZNER, C.J., and BLACK, J., concur.