2002-NMCA-067

49 P.3d 673

**Stephen MOFFAT, Plaintiff–Appellant,**

**v.**

**James A. BRANCH, Jr., Joseph J. Branney, and Elizabeth Vincoy, individually and as mother and next friend of Vernon Vincoy, Defendants–Appellees.**

Nos. 21,509, 21,623.

Court of Appeals of New Mexico.

April 30, 2002.

William G. Gilstrap, William G. Gilstrap, P.C., Albuquerque, NM, for Appellant.

Luis G. Stelzner, Ray M. Vargas, II, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, NM, for Appellees.

## OPINION

WECHSLER, Judge.

{1} The opinion filed in this case on March 20, 2002 is hereby withdrawn and the following substituted therefor. The motion for rehearing is denied.

{2} In this action to recover attorney fees, the district court, after hearing, informed counsel by letter of its intent to grant Defendants' motions to dismiss the complaint for failure to state a claim upon which relief could be granted. Prior to judgment being entered on the motion to dismiss, Plaintiff filed an amended complaint raising additional claims. Plaintiff argues on appeal that (1) the allegations in both the original complaint and the amended complaint properly stated a cause of action for the recovery of attorney fees as against each Defendant and (2) the district court erred in not allowing him to amend his complaint. We affirm the dismissal of the original and amended complaints as against Defendant Elizabeth Vincoy. Because Plaintiff had a right to amend under Rule 1–015(A) NMRA 2002, we reverse and remand this matter for further proceedings with respect to the other defendants.

### Factual and Procedural Background

#### Underlying Lawsuit

{3} Plaintiff Stephen Moffat was hired to prosecute a medical malpractice claim on behalf of Defendant Elizabeth Vincoy and her infant son. After Moffat filed the case in state court and conducted some discovery, Vincoy discharged him as counsel and assured him in writing that he would be paid for his services rendered, as soon as a settlement was reached. Vincoy then retained attorneys, Defendants James Branch Jr. and Joseph Branney. Branch and Branney re-filed the case in the United States District Court for the District of New Mexico. The

case was settled in March 1999 for 4.8 million dollars.

*Moffat's Attempt to Recover Attorney Fees in Federal Court*

{4} Upon learning of the settlement, Moffat filed a notice of an attorney charging lien in federal court. The court reserved the amount of $569,593.51 from Vincoy's recovery by payment into an interpleaded attorney fee fund until resolution of the matter. Branch and Branney moved for summary judgment, asserting primarily that Moffat was not entitled to any share of the attorney fees as a matter of law because he did not produce a recovery for his client as required by *Sowder v. Sowder*, 1999–NMCA–058, ¶¶ 10–14, 127 N.M. 114, 977 P.2d 1034 (holding that in order to enforce an attorney charging lien, four requirements must be met: (1) there must be a valid contract between the attorney and client; (2) the attorney must recover a fund for the client; (3) clear and unequivocal notice must be given of the intent to assert a lien against any judgment or recovery; and (4) assertion of the lien must be timely).

{5} A federal magistrate found that Moffat admitted that he did not produce a recovery for his client and recommended to the federal district court that, under *Sowder*, his failure to do so rendered the charging lien invalid as a matter of law. Moffat did not object to the magistrate court's recommendation. Subsequently, on October 5, 1999, the federal district court adopted the recommendation of the magistrate, granted summary judgment in favor of Branch and Branney, and awarded 100% of the fees to them. Moffat did not appeal the federal district court's order.

*Moffat's Attempt to Recover Attorney Fees in State Court*

{6} On January 28, 2000, Moffat filed suit in state court against Branch, Branney, and Vincoy. He served his complaint upon both Branch and Branney, but not Vincoy. Branch and Branney separately moved to dismiss the complaint with prejudice pursuant to Rule 1–012(B)(6) NMRA 2002, alleging Moffat's complaint did not state any legal basis for recovery, or any legal theory as

against them. On March 28, 2000, the court convened a hearing on the motions.

{7} On March 29, 2000, the district court issued a letter decision granting Branch and Branney's motions to dismiss. The letter directed defense counsel to prepare a form of order dismissing the complaint. Branch and Branney prepared a form of order of dismissal and presented it to Moffat's counsel, who refused to approve it. On April 6, 2000, Moffat's attorney filed a motion to amend complaint and a first amended complaint both of which were served on Branch, Branney, and Vincoy.

{8} On April 12, 2000, Branch and Branney requested a presentment hearing with respect to entry of the order of dismissal. The district court heard both the motion for presentment and the motion to amend on May 22, 2000. At that hearing, the court orally denied the motion to amend. It reasoned that because it had ruled, prior to Moffat's motion to amend, that the original complaint should be dismissed with prejudice, Moffat was not entitled to amend the complaint. The court entered the formal order dismissing the complaint on May 22, 2000.

{9} Vincoy moved to dismiss the first amended complaint for failure to state a claim upon which relief could be granted against her and because it did not seek relief from her directly. After a hearing, the district court issued another letter decision granting Vincoy's motion. The court entered a formal order dismissing Moffat's amended complaint against Vincoy with prejudice on July 13, 2000.

*Motions to Dismiss the Original Complaint for Failure to State a Claim*

{10} Moffat contends that the district court erred in dismissing his original complaint. Moffat's complaint recited the following concerning his work on Vincoy's case and his entitlement to attorney's fees:

[Moffat] was retained in January 1996 by ... Vincoy to represent her and her infant son in prosecution of a medical malpractice claim, which [he] did do .... In his representation of ... Vincoy, [Moffat],

amongst other accomplishments, timely filed a lawsuit in state district court; he conducted an initial investigation, and informal and formal discovery, including the depositions of numerous witnesses; he interviewed various potential expert witnesses and he obtained definitive written reports from the most important of these expert witnesses; and he coordinated the videotape presentation of Vernon Vincoy .... He timely filed administrative notices secondary to the Federal Tort Claims Act on behalf of ... Vincoy and ... Vernon Vincoy; and he evaluated and prepared the case for settlement negotiations as well as for renewed litigation and trial.

[Moffat] was terminated as counsel for ... Vincoy by correspondence on or about October 14, 1996, a copy of which is attached as Exhibit A.

The case on behalf of ... Vincoy was then prosecuted by successor counsel, ... Branch and Branney .... This case was concluded by final settlement in March 1999 by which attorney fees in the sum of $569,593.51 were reserved for payment to counsel by payment into court of an interpleaded attorney fee fund.

[Moffat] is entitled to receive a reasonable attorney fee for his efforts and his contributions to the ultimate settlement on behalf of ... Vincoy, and reasonable interest on the fee so determined.

In proceedings subsequent to settlement in the federal court, ... Branch and Branney took the position that [Moffat] was not entitled to any share or payment of the attorney fee and the federal court ultimately determined that the interpleaded attorney fee fund should be released over to ... Branch and Branney as the attorney[s] for ... Vincoy at the time of settlement, but that entitlement to and payment of a fee to [Moffat] could be further determined in other proceedings.

The complaint provided that Vincoy would only be responsible for payment if Branch and Branney contend that she should be responsible. The complaint's sole claim for relief was that "[b]ased on the foregoing allegations, [Moffat] requests that the rights between the parties regarding [his] entitle-

ment and payment of an attorney fee be determined and the attorney fee divided and damages accordingly awarded."

{11} The complaint did not identify specific remedies. Nevertheless, Moffat argues that a determination of the rights between the parties should be based on "whatever equitable and legal remedies that should apply based on the alleged facts." At the hearing on the motions to dismiss, Moffat's counsel essentially conceded that the complaint sought recovery based upon a charging lien. He argued that the federal district court's order decided only that Moffat was not the attorney at the time of the settlement, so that the lien did not attach to the settlement funds in federal court. He stated: "Our position is that [the magistrate's memorandum and recommendation] doesn't discharge fully and finally any lien per se that Mr. Moffat would have to enforce in terms of his entitlement to fee."

{12} However, as the federal court concluded, *Sowder* specifies four requirements that must be met before one can impose any attorney charging lien. *Sowder*, 1999–NMCA–058, ¶¶ 10–14, 127 N.M. 114, 977 P.2d 1034. One of those requirements is that Plaintiff must have recovered a fund for his client. *Id.* ¶ 11 (" 'It is not enough ... to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services.' " (quoting *Glickman v. Scherer*, 566 So.2d 574, 575 (Fla.Dist.Ct.App. 1990) (per curiam))). Again, we note that Moffat did not appeal the order of the federal district court. In granting the motions to dismiss in the present case, the district court stated:

I have read Judge DeGiacomo's Memorandum and Recommendation filed in the Federal proceeding on October 5, 1999 and conclude that he clearly ruled that Mr. Moffat did not have a valid charging lien against the $569,593.51 as a matter of law. It appears to be undisputed that this lien is the only lien asserted by Mr. Moffat. Therefore, Mr. Moffat is collaterally estopped from now relitigating the issue of

the charging lien and I respectfully grant both Motions to Dismiss.

{13} The district court correctly determined that the charging lien had been declared legally invalid in federal court. In so concluding, the district court incorrectly found that Moffat was collaterally estopped from relitigating the issue in state court. Instead, it was the doctrine of res judicata that barred such relitigation. However, we will affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant. *In re Adoption of Drummond*, 1997–NMCA–094, ¶ 12, 123 N.M. 727, 945 P.2d 457.

■ {14} Res judicata, or claim preclusion, precludes a party from relitigating a claim, demand, or cause of action when (1) the cause of action is identical in both suits; (2) the same parties are involved; (3) the capacity or character of persons for or against whom the claim is made is the same; and (4) the subject matter is identical. *Myers v. Olson*, 100 N.M. 745, 747, 676 P.2d 822, 824 (1984). The purpose of our application of res judicata is to protect individuals from multiple lawsuits, to promote judicial economy, and to minimize the possibility of inconsistent judgments. *Id.* Collateral estoppel also precludes the relitigation of facts, or issues, actually and necessarily decided in a prior suit. *Reeves v. Wimberly*, 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct.App.1988). However, this doctrine applies when the subject matter, or cause of action in the two suits is different. *Id.*

■ {15} Moffat sought to enforce an attorney charging lien in state court on the money awarded to Vincoy in the settlement. Although Moffat's counsel suggested at the hearing on the motions to dismiss that he may be entitled to recover under a different charging lien, the only charging lien ever asserted by him was the one brought before the federal court. Therefore, Moffat was asserting the same cause of action in state court as he had asserted in federal court.

{16} The remaining elements of res judicata are easily met. First, the parties, Branch, Branney, and Moffat, are the same parties as those in the original action in federal court.

Second, the capacity and character of the parties are also the same in both actions. Third, the facts underlying the charging lien action in federal court are the same as those set forth in the complaint.

■ {17} Finally, in order for the doctrine of res judicata to apply, the claimant must have had a full and fair opportunity to litigate the claim in the original action and there must have been a final decision on the merits. *Wolford v. Lasater*, 1999–NMCA–024, ¶ 5, 126 N.M. 614, 973 P.2d 866. The parties do not dispute that Moffat's charging lien was finally adjudged on the merits after Moffat had a full and fair opportunity to litigate the issue. The federal district court adopted the magistrate's memorandum and recommendation and issued a written order granting summary judgment on the charging lien. This order, having disposed of all of Moffat's claims, was a final order. *See Bohn v. Park City Group, Inc.*, 94 F.3d 1457, 1459 (10th Cir.1996).

{18} Moffat's complaint in state court did not state a separate legal basis for recovery for any of the other avenues for relief he argues on appeal. The complaint failed to allege the existence of a legal relationship between Moffat and Branch and Branney that could form the basis for a duty on the part of Branch and Branney to pay Moffat a portion of the fees. There was no allegation that Moffat provided any services to Branch or Branney, or that they were in any way unjustly enriched by him. Although Moffat attached to the complaint a copy of a letter from Vincoy, informing him that he would be paid for the services he had rendered in the case, he did not allege that he had any agreement with Branch or Branney, either express or implied, that would obligate them to pay him anything.

■ {19} Moffat contends that "[h]owever inarticulate the complaint may have been," the cases cited in his response to Defendants' motions to dismiss supported a claim of quantum meruit. Under the facts of this case, however, the authorities cited in the response do not support a claim of quantum meruit. Although Moffat argued he was entitled to compensation based on equitable

grounds, his arguments were no more than an attempt to relitigate the charging lien that had been dismissed in federal court. For example, Moffat cited to several cases for the proposition that the district court could apply equitable principles to apportion attorney fees among attorneys who have provided legal services to the same client. Yet, in each of the cases cited, the court's equitable jurisdiction was invoked by, and was predicated upon, an attempted enforcement of an attorney charging lien. *See Cherpelis v. Cherpelis*, 1998–NMCA–079, ¶ 20, 125 N.M. 248, 959 P.2d 973 (holding that an attorney's charging lien may be asserted when there is no explicit provision for a lien in the attorney's agreement with the client); *Rhodes v. Martinez*, 1996–NMCA–096, ¶ 16, 122 N.M. 439, 925 P.2d 1201 (holding that pursuant to an agreement between the client and attorney, the attorney's charging lien attached to funds recovered in a personal injury lawsuit in which substitute counsel had represented the client); *Robison v. Katz*, 104 N.M. 133, 135, 717 P.2d 586, 588 (1986) (holding that when the client's award resulted from the combined efforts of two law firms, both were entitled to recover from the client under attorney charging liens). None of these cases supports the equitable apportionment of attorney fees without the assertion of an attorney charging lien. Based upon the manner in which Moffat pleaded the original complaint, the district court reasonably interpreted the complaint as a request for the equitable division of attorney fees under a claimed charging lien. But this avenue of equitable relief was not available to Moffat because it had been rejected as a matter of law in federal court.

*Moffat's Right to Amend His Complaint After the Letter Decision*

{20} At the conclusion of the hearing on Defendant's motions to dismiss held on March 28, 2000, the court informed the parties that it would not rule from the bench. The next day, on March 29, 2000, the court prepared, filed, and mailed to counsel a letter decision granting the motions to dismiss. The letter included the following directive:

I ask that [defense counsel] please prepare a single form of Order addressing both Motions and then circulate the same to [plaintiff's counsel] for his approval as to form, such that it can be entered within twenty (20) days of the date of this letter.

A few days later, on April 6, 2000, Moffat filed a first amended complaint and a motion for leave to file a first amended complaint. The amended complaint presented theories of unjust enrichment, quantum meruit, third-party beneficiary of contract, and promissory estoppel.

{21} Defendants contend that the filing of the letter decision on March 29 effectively terminated Moffat's right to amend his complaint. They implicitly argue that the letter constituted a dismissal of the complaint. Moffat, on the other hand, contends that at the time he filed his amended complaint, no answer or other responsive pleading had been filed, nor had the court entered a formal written order of dismissal. . He asserts that he was entitled to amend his complaint as a matter of right.

{22} Under Rule 1–015(A),

[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

It is undisputed that no response to Moffat's complaint had been filed at the time he filed his amended complaint. Motions to dismiss and motions for summary judgment are not responsive pleadings for purposes of Rule 1–015. *Jacobson v. State Farm Mut. Auto. Ins. Co.*, 81 N.M. 600, 601, 471 P.2d 170, 171 (1970) (holding that a motion for summary judgement is not a responsive pleading for purposes of amendment); *Buhler v. Marrujo*, 86 N.M. 399, 402, 524 P.2d 1015, 1018 (Ct.App.1974) (holding that a motion to dismiss is not a responsive pleading for purposes of amendment).

{23} Thus, the issue before us is whether the district court's letter decision ended Plaintiff's ability to amend his complaint as of right under Rule 1–015(A). There is no question that the district court's letter decision did not constitute a final order. It does not include decretal language and specifically instructs counsel to prepare a final order. *See High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 37, 888 P.2d 475, 483 (Ct.App.1994) (holding that a letter was not a final order or judgment for purposes of appeal). As a consequence, the letter decision did not dismiss the action.

{24} We must, nevertheless, determine whether the issue of finality governs the right to amend. Our Supreme Court has noted that when a final order or judgment is entered, dismissing the action prior to answer, the right to amend terminates as a matter of course. *See Malone v. Swift Fresh Meats Co.,* 91 N.M. 359, 361–62, 574 P.2d 283, 285–86 (1978). This holding was reiterated by our Supreme Court in *Houston v. Young,* 94 N.M. 308, 310, 610 P.2d 195, 197 (1980), holding that when the plaintiff did not attempt to amend the complaint at the trial level, the plaintiff could not attempt to do so on appeal because "[t]he right to amend terminates upon entry of a final order or judgment." While the language of *Malone* and *Houston* suggests a conclusion that a party may amend prior to entry of a final order, the holding in those cases does not reach the question of this case of whether there must be a final order to terminate a party's right to amend.

{25} Defendants point to *Hamilton v. Hughes,* 64 N.M. 1, 322 P.2d 335 (1958), in arguing that amendment as a matter of course ends once the district court has ruled on a dispositive motion. Although there is language in *Hamilton* to the effect that a plaintiff may not amend a complaint after the court has announced its ruling granting summary judgment, *id.* at 4, 322 P.2d at 337, such language was unnecessary to the holding in that case. The plaintiff had not filed an amended complaint, but only requested leave to amend, which the lower court had discretion to deny. *Id.* Being only dictum,

this language in *Hamilton* is not controlling, and we do not find it persuasive with regard to the present circumstance. *See Phoenix Indem. Ins. Co. v. Pulis,* 2000–NMSC–023, ¶ 18, 129 N.M. 395, 9 P.3d 639. Instead, we accept finality as suggested by *Malone* to delineate the point at which a party may no longer amend as a matter of course based on the principles of finality and preclusion.

{26} The essence of res judicata is that litigants are encouraged and afforded a full and fair opportunity to raise issues that exist between them in a single action. *See Ford v. N.M. Dep't of Pub. Safety,* 119 N.M. 405, 409, 891 P.2d 546, 550 (Ct.App.1994). There are consequences for the failure to take advantage of this opportunity. If a litigant is able to raise a claim in an action before the action becomes final, but does not do so, the claim is forever barred. *Id.* at 409–10, 891 P.2d at 550–51.

{27} Rule 1–015(A) promotes this policy. It allows one amendment of a pleading to which there is a responsive pleading as long as the responsive pleading has not been served. The rule has no time limit. Rule 1–015(A). The rule leaves to the control of a party asserting a claim the ability to be complete in the party's assertions before the bar of preclusion takes effect. When we consider the effect of the res judicata doctrine in connection with the language of Rule 1–015(A), we believe that it is the intent of Rule 1–015(A) to allow one amendment of a complaint as a matter of right when no answer is served during the pleading stage of litigation.

{28} Defendants further argue that allowing Plaintiff to amend after the court announced its decision would encourage delay in finalizing orders after a ruling and discourage judicial economy because parties will merely amend after the court has stated its intent to dismiss a pleading. To the extent that there may be some inefficiency in judicial effort when a party amends after the court has addressed a motion and expressed its intended ruling, the negative effect of such inefficiency is overcome by the desire to afford the parties a full and fair opportunity to resolve their disputes, especially in light of the effect of res judicata. Of course, the

court maintains control of the parties' pleadings and may address delay and abuse in pleading practice under Rule 1–011 NMRA 2002.

*Sufficiency of the First Amended Complaint*

{29} Branch and Branney further argue that the first amended complaint is legally insufficient on its face. The amended complaint asserts claims based on the theories of unjust enrichment, quantum meruit, third-party beneficiary of contract, and promissory estoppel as against Branch and Branney. We decline to examine the sufficiency of the pleading as to each such claim because to do so would usurp the function of the district court with respect to matters it did not address. Branch and Branney did not file a motion to dismiss the amended complaint. At the hearing, their counsel asked the district court to "convert" their response to the motion to amend into a motion to dismiss. In denying Moffat's attempt to amend his complaint, the district court believed that its letter decision constituted a ruling, or order, sufficient to terminate Moffat's right to amend his complaint and ruled solely on that basis.

{30} As a result, we remand to the district court to reinstate the first amended complaint. In so doing, we do not pass judgment on the merits of the claims set forth therein. Our ruling is limited to the procedural right to amend, under the circumstances of this case.

*Vincoy's Motion to Dismiss Moffat's Amended Complaint*

{31} Moffat contends that the allegations in both the complaint and the amended complaint properly state a cause of action against Vincoy for the recovery of an appropriate attorney fee and that the district court erred in granting Vincoy's motion to dismiss. We review the granting of the motion to dismiss de novo. *Padwa v. Hadley*, 1999–NMCA–067, ¶ 8, 127 N.M. 416, 981 P.2d 1234.

{32} Although Vincoy was named as a defendant in the original complaint, Moffat did not serve a copy of that complaint upon her. Therefore, we do not consider whether the original complaint stated a valid claim against her.

{33} Upon our review of the amended complaint, we conclude that it fails to state a claim upon which relief could be granted as against Vincoy. First, although the amended complaint alleges that Vincoy has a contractual, legal, and equitable obligation to pay Moffat the value of the contributions to the lawsuit, it does not make any affirmative claim for relief against her. Rather, it states that Vincoy should be considered a necessary party only if Branch and Branney "deny and evade their responsibility to pay a reasonable portion of the fee to ... Moffat." Moffat's only apparent theory and request for affirmative relief is the following:

> Under theories of unjust enrichment, quantum meruit, third-party beneficiary of contract, and promissory estoppel, defendant attorneys James Branch and Joseph Branney should be ordered by this Court to pay to Stephen Moffat a fair and reasonable portion of the $750,000.00 attorney fee which has now been released to them by the Federal Court.

This claim for relief is asserted against Branch and Branney, not Vincoy.

{34} Further, the amended complaint does not specify in what capacity Vincoy was obligated to pay Moffat any fee. In fact, the amended complaint acknowledges that Vincoy previously satisfied her obligation to pay the maximum attorney fee allowed by federal law. Moffat acknowledged in his amended complaint that the attorney fee in this action is governed by the Federal Tort Claims Act, ch. 753, tit. IV, 60 Stat. 842 (1946) (codified as amended in scattered sections of 28 U.S.C.) (FTCA), which limits the allowable fees in Vincoy's lawsuit to twenty-five percent of the judgment. The FTCA provides, in pertinent part, as follows:

> No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any judgment rendered pursuant to [S]ection 1346(b) of this title or any settlement made pursuant to [S]ection 2677 of this title, or in excess of 20 per centum of any award, compromise, or settlement made pursuant to [S]ection 2672 of this title.

**420**

28 U.S.C. § 2678 (1994). The FTCA further provides a criminal penalty for any attorney who demands more than the specified percentage. *Id.* Moffat also acknowledges in his amended complaint that Vincoy paid the entirety of the statutory attorney fee into an interpleaded attorney fee fund in federal court. These uncontested facts establish that Vincoy previously satisfied the maximum attorney fee obligation under the FTCA. Vincoy could not be obligated to pay any more fees than the FTCA provides.

*Conclusion*

{35} We affirm the district court's dismissal of the original complaint and the dismissal of the first amended complaint as to Vincoy. We reverse the district court's dismissal of the action as amended against Branch and Branney, direct that the first amended complaint be reinstated, and remand for further proceedings consistent with this opinion.

{36} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and CELIA FOY CASTILLO, Judge.