816 P.2d 1114

**SUNWEST BANK OF ROSWELL, N.A.,
a national banking association,
Petitioner,**

v.

**MILLER'S PERFORMANCE WARE-
HOUSE, INC., Scott D. Miller, Sr. and
Ethel D. Miller, his wife, Respondents.**

No. 19735

Supreme Court of New Mexico.

Sept. 4, 1991.

Atwood, Malone, Mann & Turner, Rod M.
Schumacher, Susan Zeller, Roswell, Mod-

rall, Sperling, Roehl, Harris & Sisk, R.E. Thompson, Albuquerque, for petitioner.

Hinkle, Cox, Eaton, Coffield & Hensley, Albert L. Pitts, Richard E. Olson, Rebecca Nichols Johnson, Roswell, for respondents.

## OPINION

FRANCHINI, Justice.

We granted certiorari to consider the following two issues: (1) Whether an attorney's charging lien attaches to a judgment in favor of the attorney's client when there is no actual pecuniary recovery; and (2) whether an attorney's charging lien takes priority over a set-off of judgments awarded the attorney's client and an adverse party. We hold that the trial court first must find that a valid contract existed between the attorney asserting the lien and his client, and that the agreement provided for a lien to attach to the client's award. If it does so find, then it is within the trial court's equitable power to determine whether justice and fairness requires the lien to be given priority over a set-off, based on a balancing of the facts and equities of each case. Because the lower court based its holding on its inability to distinguish the facts of *Forrest Currell Lumber Co. v. Thomas*, 82 N.M. 789, 487 P.2d 491 (1971), from this case, we remand to the trial court to first determine if the contingency fee agreement here was intended to attach to a judgment with no pecuniary recovery. If the court finds the agreement ambiguous and sufficiently broad to include attorney fees upon only a judgment, then it will balance the equities between these parties and decide if the lien is superior to a set-off. Otherwise, the terms of the contingency fee agreement will be applied as written.

## I. FACTS

The Millers obtained loans for their business from Sunwest Bank of Roswell (Sunwest), secured by mortgages on the Millers' warehouse and home, and a security interest in their business's inventory. When the Millers defaulted, the inventory was sold in partial satisfaction of Sunwest's notes. To recover the remainder of the debt, Sunwest filed a foreclosure suit. In response, the Millers counterclaimed, contending that their debt should be reduced or voided. They alleged, among other things, that Sunwest wrongfully refused to renew their promissory notes and, thus, foreclosure was inappropriate and unjustifiably injured their business, which in turn rendered the Millers incapable of repaying their debt. To defend their claims, the Millers agreed to pay their attorneys a contingency fee of forty percent of any money or property recovered.

The district court granted Sunwest's motion for summary judgment and awarded the bank $388,080 plus interest for the balance of the Millers' debt. The Millers were awarded $82,000 on their counterclaims, based on conclusions from interrogatories submitted to a jury that found Sunwest liable for the following: (1) The tort of economic compulsion, (2) breach of the covenant of good faith and fair dealing, and (3) conducting a commercially unreasonable sale of the business inventory. The court additionally voided the mortgage on the Millers' home based on the jury's finding that the bank made negligent or fraudulent misrepresentations to the Millers, which induced them to mortgage their residence. This finding should have indicated only negligent misrepresentation (Jury Interrogatory No. 12) because the jury found that Sunwest did not act willfully, wantonly, or in reckless disregard for the right of the Millers (Jury Interrogatory No. 13).

After trial, the Millers' counsel filed a Notice of Attorney's Charging Lien, claiming forty percent ($48,449) of the Millers' award, based on their contingency fee agreement. In opposition, Sunwest requested that the court grant a set-off and thereby deduct the Millers' award from Sunwest's award, rather than requiring the bank to pay the counterclaim award. The trial court ordered foreclosure of the mortgage on the Millers' commercial property which ultimately yielded $130,000; hence, Sunwest collected only part of its judgment against the Millers. Furthermore, the court concluded that the charging lien took

precedence over a set-off and, consequently, directed Sunwest to pay $48,449 to the Millers' counsel for attorney fees and costs.

Sunwest appealed the trial court's preference of the lien for four reasons. First, it asserts that the ruling resulted in an unconscionable burden on Sunwest because the bank could not collect its entire judgment against the insolvent Millers, yet it was required to pay their attorneys' fees. Second, Sunwest claims that the general rule favors set-offs, but here the court felt bound by *Forrest Currell*, which held an attorney's charging lien superior to a set-off. Nonetheless, Sunwest asserts that *Forrest Currell* was distinguishable from this case. Third, the bank points out that the specific language of the contingency fee agreement entitled the Millers' counsel to only a percentage of any money or property actually paid, received, or collected. Since the Millers received no money or property, but only a verdict, their counsel was entitled to no compensation under the terms of the contract. Finally, Sunwest asserts that New Mexico case law upholds payment of attorney fees by the prevailing party only when justified by statute or contract. The bank prevailed on the bulk of the suit and neither a statute nor a contract bound Sunwest to pay the Millers' attorneys.

Appellees refute Sunwest's inequitable consequence claim by reasoning that, in effect, Sunwest would not be paying the Millers' attorneys' fees because the lien would be satisfied out of the Millers' award. Also, they claim that American courts have not uniformly favored set-offs. Next, appellees maintain that *Forrest Currell* is controlling because in that case and here, the judgments of all parties accrued at the same time and in the same cause of action. Lastly, they dispute Sunwest's narrow interpretation of recovery and contend that recovery has been construed as synonymous with a successful judgment. The court of appeals affirmed the trial court's ruling and agreed that this case and *Forrest Currell* were factually similar and, thus, the controlling authority. We granted certiorari, and reverse and remand.

## II. DISCUSSION

The doctrines in conflict here originally developed in England as equitable remedies. First, the English courts recognized a charging lien as a means for "protect[ing] attorneys against dishonest clients, who, utilizing the services of the attorney to establish and enable them to enforce their claims against their debtors, sought to evade payment for the services which enabled them to recover their demand." *Prichard v. Fulmer*, 22 N.M. 134, 145, 159 P. 39, 42 (1916). Second, courts of chancery invoked the procedure of set-off to achieve equity and justice by adjusting in one suit all conflicting claims between parties that were readily susceptible to an expedient and final resolution. *Federal Sur. Co. v. Union Indem. Co.*, 161 Tenn. 621, 624, 33 S.W.2d 421, 421 (1930).

Judge Cardozo wrote that the issue of whether an attorney's charging lien took priority over a set-off of judgments "revive[d] the smoldering fires of an ancient judicial controversy. The beginnings may be traced to England." *Beecher v. Peter A. Vogt Mfg. Co.*, 227 N.Y. 468, 469, 125 N.E. 831, 832 (1920). There remains "hopeless conflict" among American courts on this issue, in the absence of a statute. *Johnson v. Johnston*, 123 Okl. 203, 205, 254 P. 494, 495 (1927); Annotation, *Attorneys' Lien as Subject to Set-off Against Judgment*, 34 A.L.R. 323 (1925). We are in accord with the prevailing view that the decision is within the trial court's discretion and "[e]ach case is to be determined on its own circumstances and merits." *Kisthardt v. Betts*, 321 Pa. 270, 271, 183 A. 923, 924 (1936) (quoting *Leitz v. Hohman*, 207 Pa. 289, 291, 56 A. 868, 868 (1904); *see generally* S.M. Speiser, Attorneys' Fees 389 (1973); Annotation *Assignment of Judgment or an Interest Therein, to Attorney for His Services in Procuring It, as Subject to Set-off of Judgment Against the Assignor*, 51 A.L.R. 1278, 1282 (1927).

The lower courts misapprehended the decision in *Forrest Currell*. Through that case, this court implicitly held that it was within the trial court's equitable au-

thority to weigh the equities of each case and determine whether an attorney's charging lien took priority over a set-off of judgments. *Forrest Currell*, 82 N.M. at 790, 487 P.2d at 492. There, a lumber company and an insurance company sought repayment of money loaned to the Thomases and received a $129,952 award. The Thomases' counterclaim for repayment of brokerage and insurance fees that the insurance company illegally took from them in a separate transaction resulted in a $113,000 judgment. For representation, the Thomases entered into a contingency fee agreement stipulating that their attorney would receive fifty percent of any recovery based on the counterclaim. After appraising all of the specific facts of that case, we held that the trial judge properly allowed preference to the charging lien. *Id.* Hence, the holding in *Forrest Currell* did not take away the trial court's equitable jurisdiction. To the contrary, we affirmed the trial court's decision based on our presumption that it did balance the specific parties' equities. Thus, *Forrest Currell* was one example of a trial court exercising its authority to balance the parties' equities and determine whether justice mandates a lien or a set-off.

Further, in *Forrest Currell*, we approvingly cited treatment of the identical issue in *Hanna Paint Manufacturing Co. v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d 371 (10th Cir.1962). There, the United States District Court for the District of New Mexico accurately applied New Mexico law and recognized the trial judge's power to ascertain whether, under the circumstances of each case, a set-off or a charging lien was superior. In sustaining the trial court's conclusion, the *Hanna* court emphasized that:

> [T]he court had much more before him than statements of counsel upon which to base his decision. He had more than three years of experience with the case

and knew by personal knowledge exactly what services appellees had performed in connection with the case. That personal knowledge of the case, together with the extensive judicial experience of the trial judge, formed a sound basis for his judgment.

*Id.* at 373. Consistent with these opinions, we ruled that "[b]ecause a court exercises its equitable powers in enforcing an attorney's charging lien, it may inquire into the reasonableness of the asserted fee for purposes of enforcing the lien." *Northern Pueblos Enters. v. Montgomery,* 98 N.M. 47, 49, 644 P.2d 1036, 1038 (1982).

 The case before us raises an additional and paramount issue that must be assessed before equities are balanced. The trial court's authority to adjudge whether a charging lien will be subordinated to or given priority over a set-off is contingent upon a valid contract between the attorney asserting the lien and his client and the terms of that agreement. *Wright v. Ellison,* 68 U.S. (1 Wall.) 16, 21–22, 17 L.Ed. 555 (1863). A contract will be construed as a whole so as to ascertain the intent of the parties. *Schaeffer v. Hinkle,* 93 N.M. 129, 597 P.2d 314 (1979). Where the terms of a written agreement are clear, "intent must be ascertained from language used. But where there is an ambiguity, intent may be ascertained from the language and conduct of the parties and the surrounding circumstances." *Ashley v. Fearn,* 64 N.M. 51, 53, 323 P.2d 1093, 1095 (1958); *see also Miller v. Miller,* 83 S.D. 227, 234, 157 N.W.2d 537, 541 (1968) ("A valid contract for fees, either express or implied, between an attorney and his client is necessary for the existence of a lien."). The contingency fee agreement between the Millers and their counsel appears to clearly anticipate an actual monetary recovery by the Millers before their attorneys would collect a fee.[1] A contract is deemed ambiguous only if it is reasonably and fully susceptible of differ-

---

1. The contingency fee agreement with Millers signed June 16, 1986, stated that "[a]s the sole compensation for said legal services by said Attorney, Clients, and each of them, agree to pay Attorney 40% of any money or property paid, received or collected by compromise or otherwise in satisfaction or settlement of any such claims. It is agreed that this Agreement is and shall operate as an assignment pro tanto to said attorney * * * of anything received or collected thereon and of any judgment or judgments obtained thereon."

ent constructions. *Vickers v. North Am. Land Devs. Inc.*, 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). The mere fact that the parties are in disagreement on constructions to be given to the contract does not of itself necessarily establish an ambiguity. *Id.* However, if the trial court determines that the agreement is ambiguous, and the contract could be understood to include payment of attorney fees upon a judgment, then the trial court will balance the equities between the attorney's charging lien and the set-off.

█ For future reference, we set forth a guide for weighing the equities and specific facts of each case, when a valid attorney-client contract anticipates a charging lien will attach to the client's award. We suggest that the trial judge evaluate, among others, the following factors that other courts have deemed important in deciding whether an attorney's lien or a set-off takes precedence:

1. [W]ere both judgments in existence when the assignment was made to the attorneys?
2. [If] both judgments were in existence at the time of the assignment, did the attorneys-assignees know of the judgment against their assignor?
3. [W]as the client-assignor insolvent at the time of the assignment?
4. [D]id the two judgments arise out of the same transaction or related transactions?
5. [D]o both judgments include attorney's fees so that, in effect, attorney's fees will be set off against attorney's fees?

*Hartford Accident & Indem. Co. v. Pyle*, 271 Or. 97, 101, 530 P.2d 843, 845 (1975). "These factors * * * [are not] absolute standards * * * subject to a mechanical application in each case. Rather, the significance of each depends upon the particular circumstances of each case." *Ketcham v. Selles*, 96 Or.App. 121, 124, 772 P.2d 419, 422 (1989) (discussing the *Hartford Accident* factors). For instance, the court may deem it significant if a judgment was awarded on the basis of fraud. *Forrest Currell*, 82 N.M. at 790, 487 P.2d at 492.

The trial court, therefore, should consider the factors enumerated above as a recommendation of circumstances to balance when equitably resolving a dispute between the priority of an attorney's charging lien and a set-off of judgments.

█ Here, the trial court based its decision, that the attorney's charging lien was superior, on the court's inability to distinguish the facts of this case and *Forrest Currell*. Because the court's focus was whether the facts of this case and *Forrest Currell* were similar, and finding that they were, it applied the conclusions of that case here. It did not determine therefore whether the fee agreement anticipated imposition of an attorney's charging lien should the Millers fail to receive a monetary recovery. SCRA 1986, 1–052(B)(1)(g) states that "[w]here the ends of justice require, the cause may be remanded to the district court for the making and filing of proper findings of fact and conclusions of law." Because of the inadequacy of the record, the ends of justice require the trial court to consider the facts surrounding the contract between the Millers and their attorneys and to determine the meaning of the agreement.

█ We hold that the terms of a valid attorney-client contract must provide that an attorney's charging lien can attach to the client's award. Once that is established, then it is within the trial court's equitable jurisdiction, based on a balancing of the facts and equities of each case, to determine whether justice and fairness demand the lien to be subordinated to or be given priority over a set-off of judgments. Additionally, it is within the trial court's discretion which factors to weigh in appraising the unique and specific equities involved in a particular case. Therefore, this case is remanded to the district court to proceed in a manner consistent with this opinion.

IT IS SO ORDERED.

RANSOM and BACA, JJ., concur.