925 P.2d 1201

**Bob RHODES, Plaintiff,**

**v.**

**Earl D. MARTINEZ and Carlos Martinez, Defendants.**

**Joseph David CAMACHO, Interested Party/Appellant,**

**v.**

**The BRANCH LAW FIRM, Interested Party/Appellee.**

No. 16698.

Court of Appeals of New Mexico.

Sept. 6, 1996.

Clara Ann Bowler, Albuquerque, for Interested Party/Appellant.

Felicia C. Weingartner, Margaret Moses Branch, Daniel R. Swiss, The Branch Law Firm, Albuquerque, for Interested Party/Appellee.

## OPINION

ALARID, Judge.

1. Attorney Joseph David Camacho (Camacho) appeals from an order denying enforcement of his lien for attorney's fees, accrued in settling Plaintiff Bob Rhodes' (Rhodes) property damage claim, on the grounds that Camacho's lien could not reach funds recovered in Rhodes' personal injury action and retained by the Branch firm as its fee. We reverse and remand with instructions.

### FACTS

2. Bob Rhodes was injured, and his 1989 Cadillac was damaged, in a car accident on December 20, 1989. On December 26, 1989, he executed a "Civil Retainer Agreement" retaining Camacho. Rhodes' property damage claims were settled in February of 1990. Camacho remitted the entire amount of the settlement to Rhodes to enable Rhodes to replace his Cadillac. According to Camacho, he told Rhodes that he would collect all of his attorney's fees and costs out of future proceeds in the case. Rhodes represented that he understood Camacho would not be charging a contingency fee on the property damage claim, but that fees would only be collected based on the personal injury claim. Neither Camacho nor Rhodes testified in person or by affidavit.

3. Nineteen months later, Camacho filed "Plaintiff's Complaint For Personal Injury" on September 27, 1991. Matters apparently disintegrated rapidly between Rhodes and Camacho because on October 22, 1991, Camacho filed his attorney's lien with the court. The Branch Law Firm entered its appearance for Rhodes on December 30, 1991. Rhodes' remaining claims were settled and the lawsuit was dismissed with prejudice on September 16, 1994. Rhodes and Defendants below are not parties to this appeal. Camacho thereafter filed a motion in the Rhodes lawsuit to enforce his attorney's lien. He seeks only fees for services rendered in connection with the property damage settlement, and claims no fees relating to the personal injury litigation. The Branch firm

holds the fees it collected for the personal injury litigation in trust while this dispute is resolved. The trial court denied Camacho's motion on the grounds that Camacho's lien for fees accrued in settling the property damage claim did not attach to funds recovered in the personal injury lawsuit. This appeal followed, and we reverse and remand.

## DISCUSSION

### I. Standard of Review

■ 4. The primary issue to be decided is the meaning of the written contract between Rhodes and Camacho. The interpretation of a written contract, where only documentary evidence is at issue, is a question of law which we review de novo. *Board of Educ. v. James Hamilton Constr. Co.*, 119 N.M. 415, 418, 891 P.2d 556, 559 (Ct.App. 1994), *cert. denied*, 119 N.M. 354, 890 P.2d 807 (1995).

### II. An Attorney's Charging Lien

5. We discuss the general principles governing attorneys' charging liens to provide the context for our analysis. The charging lien has been described as "the right to invoke the aid of the court, by the control which it exercises over its process and officers in the cause in which the judgment was rendered, in securing for him his just compensation." *Prichard v. Fulmer*, 22 N.M. 134, 146, 159 P. 39, 43 (1916). In *Prichard*, J.H. Fulmer retained attorney George W. Prichard to foreclose mortgages on real property. *Id.* at 136, 159 P. at 39. Prichard filed suit, asserting an attorney's lien for the allegedly unpaid fee. *Id.* at 137, 159 P. at 40. The Supreme Court recognized that an attorney might have a retaining lien "founded upon possession," *id.* at 139, 159 P. at 40, not relevant here, as well as a charging lien. The Court explained the charging lien embodies the attorney's right

> to recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same, and also to prevent or set aside assignments or settlements made in fraud of his right.

*Id.* at 140, 159 P. at 41; *accord Northern Pueblos Enters. v. Montgomery*, 98 N.M. 47, 49, 644 P.2d 1036, 1038 (1982) (quoting *Prichard*).

6. *Northern Pueblos* is also instructive. J.H. Burttram filed an attorney's lien for $19,856.87 against Northern Pueblos Enterprises (Northern Pueblos), seeking to attach funds belonging to Northern Pueblos in the registry of the court (totaling $16,427.01) in partial satisfaction of his lien. *Id.* at 48, 644 P.2d at 1037. At the same time a judgment creditor of Northern Pueblos, Pueblo Electric and Refrigeration (Pueblo Electric), claimed priority on the same funds to satisfy the judgment it had received against Northern Pueblos of $5,984.93. *Id.* After an evidentiary hearing, the trial court found that Burttram was "reasonably entitled to an attorney's fee in the sum of $10,000.00." *Id.* It ordered the clerk to disburse $5,984.93 plus costs of $67.36 to Pueblo Electric and $10,000.00 to Burttram. *Id.* The Supreme Court affirmed the judgment. *Id.* at 49, 644 P.2d at 1038. "Because a court exercises its equitable powers in enforcing an attorney's charging lien, it may inquire into the reasonableness of the asserted fee for purposes of enforcing the lien." *Id.* The Court recognized that a court "may not alter or amend a contract." *Id.* It explained that the court had not altered "Burttram's contract with Northern Pueblos" by enforcing the lien to the extent of $10,000.00 "for purposes of setting priorities of liens." *Id.* "The court simply gave Burttram equitable relief for a reasonable fee, leaving Burttram free to go against Northern Pueblos for the remaining fees due under the contract." *Id.*

■ 7. While some states have enacted statutory charging liens, New Mexico has not. *Thompson v. Montgomery & Andrews, P.A.*, 112 N.M. 463, 465, 816 P.2d 532, 534 (Ct.App.), *cert. denied*, 112 N.M. 388, 815 P.2d 1178 (1991). New Mexico's charging lien "has its origin in the common law, and is governed by equitable principles." *Northern Pueblos Enters.*, 98 N.M. at 49, 644 P.2d at 1038 (citing *Prichard*, 22 N.M. at 139, 159 P. at 40).

## III. The Existence of a Valid Lien: The Contract Between Rhodes and Camacho

8. Before an attorney's charging lien will be effective, "the terms of a valid attorney-client contract must provide that an attorney's charging lien can attach to the client's award." *Sunwest Bank of Roswell, N.A. v. Miller's Performance Warehouse, Inc.*, 112 N.M. 492, 496, 816 P.2d 1114, 1118 (1991). Here, the parties dispute whether the contract signed by Rhodes and Camacho provides for Camacho's lien to attach to the proceeds of the personal injury settlement.

9. "The function of the courts is to interpret and enforce a contract as made by the parties." *Schaefer v. Hinkle*, 93 N.M. 129, 131, 597 P.2d 314, 316 (1979) (citation omitted). The court may not "do for the parties what they failed to do for themselves," *Kimberly, Inc. v. Hays*, 88 N.M. 140, 145, 537 P.2d 1402, 1407 (1975), but must enforce the contract as written. "[A]bsent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987) (citations omitted). The parties do not claim that the agreement between Rhodes and Camacho is ambiguous, and we do not find it so.

10. The "Civil Retainer Agreement" (the contract) between Rhodes and Camacho provides in pertinent part:

Date of accident 12/21/89     Place of Accident Central & 98th

1. I retain you to prosecute, or adjust, all claims I may have arising out of the above accident.

. . . .

4. You are to handle this claim on a contingency fee basis, which means that if I receive no money, I will owe you no legal fee.

5. A contingency fee also means that if I do receive money, one-third (⅓) of the gross amount received, plus tax, is your full payment of your legal fee and that of any lawyer you associate or employ. If the case goes to trial, the contingency fee basis foe [sic] your legal fees will be forth [sic] percent (40%) of the gross amount received, plus tax.

. . . .

7. In consideration of your past and future services, I give a lien for your legal fee and advanced costs and expenses against the proceeds of my claim.

The contract clearly states that Rhodes is hiring Camacho to represent him for "all claims I may have arising out of the above accident." No exception is made for any type of claim. Therefore the contract applies to personal injury, property damage, and any other claims Rhodes might have had arising out of the accident specified in the contract. *See Walters v. Hastings*, 84 N.M. 101, 105, 500 P.2d 186, 190 (1972).

11. *Walters* is a case in point where the extent of the representation and the scope of the attorney's lien were defined broadly by description of the accident and not just by the specific claim. In *Walters*, Wally Joe Walters, minor son of Herman Walters (Walters), was a passenger in a car driven by his cousin, Mannelyn Hastings. Wally Joe suffered serious injuries on March 1, 1969, in a collision with a car driven by Mr. Spiller. *Id.* at 102, 500 P.2d at 187. Walters contracted with attorney James L. Brown on a contingency basis for representation " 'in connection with the accident and resultant injuries and damages which we have discussed.' " *Id.* Brown negotiated a settlement with Spiller's insurance carrier, out of which he received the fee that was due him. *Id.* Brown then recommended Walters approach Hastings' insurance carrier. Walters declined to do so, on account of the close family relationship. *Id.* at 103, 500 P.2d at 188. Instead, Walters fired Brown and negotiated with Hastings' carrier directly. *Id.* Brown asserted a lien over any proceeds recovered from Hastings' insurance company. *Id.* Walters argued the original contingency agreement covered only claims against Spiller. *Id.* at 102, 500 P.2d at 187.

12. The Supreme Court construed the ambiguous phrase " 'which we have discussed,' " according to " '[t]he undisputed evidence,' " to refer to the accident occurring on March 1, 1969, and resulting injuries and

damages to the son and to the father. *Id.* at 105, 500 P.2d at 190. Thus understood, "the contract . . . covered all claims arising from the accident and the resultant injuries and damages including the Hastings' claim." *Id.* Further, "there was no substantial evidence of any justification in discharging Mr. Brown for his counsel regarding the Hastings' claim." *Id.* at 106, 500 P.2d at 191. "[A]n attorney discharged without cause is entitled to recover the stipulated fee on the happening of the contingency." *Id.* at 107, 500 P.2d at 192. Brown was allowed to collect his contingency fee on funds recovered from the Hastings' insurer.

13. In the case at bar, the trial court did not find that Camacho had been discharged for cause. No such finding was requested. As in *Walters,* the Rhodes–Camacho contract does not limit itself to any particular part of Rhodes' claim. We hold that Camacho's attorney's lien validly attached to all the proceeds of the personal injury settlement.

14. The Branch firm asserts that an attorney's charging lien only reaches funds created by that attorney's efforts, citing *Thompson,* 112 N.M. at 465, 816 P.2d at 534, and cases from other jurisdictions. In *Thompson,* the Court of Appeals affirmed the trial court's dismissal of a suit brought by attorney James A. Thompson to enforce a charging lien because of lack of notice. *Id.* at 467, 816 P.2d at 536. Thompson failed to file his lien with the court in the underlying lawsuit. He also failed to give notice of his claimed lien to the potential judgment debtor or his own clients. *Id.* at 465, 816 P.2d at 534. The Court added that Thompson improperly sought to enforce his lien in "an independent action after the funds [had] been disposed of." *Id.* at 467, 816 P.2d at 536.

15. Camacho properly filed his lien in the underlying lawsuit before the Branch firm entered its appearance and later mailed a copy to the Branch firm. There is no assertion that Camacho gave inadequate notice of his claim.

16. *Thompson,* however, does not prohibit the attorney and client from agreeing that a lien will be placed on *all* proceeds of a claim even if the attorney worked only on a portion of it. In his contract with Camacho, Rhodes agreed to "give a lien for your legal fee and advanced costs and expenses against the proceeds of my claim." The claim encompassed personal injury as well as property damage. Therefore, Camacho's lien applied to the settlement obtained by the Branch firm on the personal injury claim. *See* Robert L. Rossi, *Attorney's Fees* § 12:16 (2d ed. 1995).

17. The Branch firm cites cases from other jurisdictions for the proposition that an attorney's charging lien reaches only funds which that attorney's efforts helped to establish. We are not persuaded because the cited cases are either from jurisdictions that have statutes governing attorneys' charging liens or represent common law traditions which differ from that laid down in *Prichard.* It is simply not the law in New Mexico that an attorney's charging lien is only effective against money recovered through that attorney's services. Under *Prichard* and *Walters* it can reach further if the agreement between the client and the attorney so provides. The Rhodes–Camacho agreement unambiguously says that Camacho is engaged to represent Rhodes on "all claims I may have arising out of the above accident," that Camacho is entitled to a contingency fee, and that Camacho is entitled to a lien "against the proceeds of my claim." There is no exception if Rhodes changes attorneys. The Court of Appeals may not enforce the agreement as Rhodes or the Branch firm now wishes it had been written, but must enforce it as it was written. *CC Housing Corp.,* 106 N.M. at 579, 746 P.2d at 1111; *Kimberly,* 88 N.M. at 145, 537 P.2d at 1407. The agreement provides that Camacho's lien will reach the proceeds of the personal injury settlement.

18. To say the Court will not rewrite the agreement for the parties does not necessarily mean the lien will be enforced in favor of his entire claim. The agreement allows Camacho's lien to reach funds recovered by Rhodes subsequent to Camacho's discharge. But an attorney's charging lien in New Mexico "is governed by equitable principles." *Northern Pueblos Enters.,* 98 N.M. at 49, 644 P.2d at 1038 (citing *Prichard,* 22 N.M. at 140,

159 P. at 41). The agreement is valid, but equity may choose whether to enforce it and to what extent. *See Northern Pueblos Enters.* and the discussion in the following section. Camacho may bring a separate breach of contract suit against Rhodes to recover his fee. *See Thompson,* 112 N.M. at 467, 816 P.2d at 536. *Cf. Northern Pueblos Enters.,* 98 N.M. at 49, 644 P.2d at 1038.

19. We note that Camacho waived any right he may have had under the contingency fee agreement, and under *Walters,* to collect one-third of the personal injury settlement by stating in his motion that he was not seeking any portion of the personal injury settlement. *See Christian Placement Serv. v. Gordon,* 102 N.M. 465, 471, 697 P.2d 148, 154 (Ct.App.1985) (" 'Waiver' is the intentional relinquishment ... of a known right.") (citation omitted). To be decided is whether, under the circumstances of this case, equity will allow him to collect one-third of the property damage settlement amount from the proceeds of the personal injury settlement.

## IV. Balancing The Equities

20. We remand this matter to the trial court as there are several issues which must be addressed and evidence which may need to be taken to determine if equity should enforce the lien: (1) whether Camacho waived his right to enforce the lien by paying out the entire amount of the property damage recovery to Rhodes; (2) whether the Branch firm is estopped from asserting any defenses to Camacho's claim, including its reasonableness; and (3) whether Camacho's lien should have priority over the Branch firm's entitlement to recover its fees.

### A. Did Camacho waive a right to recover the fees for the property damage settlement?

21. We decline to find as a matter of law that Camacho waived his attorney's lien in remitting the entire $22,000 to Rhodes, no matter what Camacho said to Rhodes at the time. *Cf. Prichard,* 22 N.M. at 148–149, 159 P. at 44. In the circumstances under which Camacho remitted the entire $22,000 of the property damage settle-

ment to Rhodes, Camacho may have waived the right to assert an attorney's lien with regard to that portion of his fee. *See Albuquerque Nat'l Bank v. Albuquerque Ranch Estates, Inc.,* 99 N.M. 95, 101, 654 P.2d 548, 554 (1982) (waiver may be "inferred from circumstances indicating an intention to waive"); *Christian Placement Serv.,* 102 N.M. at 471, 697 P.2d at 154. Whether waiver exists is a determination of fact for the trial court. *Albuquerque Nat'l Bank,* 99 N.M. at 102, 654 P.2d at 555. The trial court admitted no evidence and made no finding regarding whether Camacho had waived his lien because it decided that the lien did not reach the personal injury settlement. The trial court never reached the question of waiver, because it decided that the lien did not reach the personal injury settlement. Factual questions remain, such as exactly what Camacho told Rhodes and what a reasonable person would have understood Camacho to mean.

### B. Is the Branch firm estopped from asserting any defenses to Camacho's lien?

22. "Determination of whether a claim of equitable estoppel has been proven is a question of fact for the trier of fact." *In re Estates of Salas,* 105 N.M. 472, 475, 734 P.2d 250, 253 (Ct.App.1987). Here, too, factual issues need to be determined. The Branch firm had notice of the lien, which was filed with the court. Camacho additionally mailed a copy to the Branch firm more than two years before the personal injury claim was settled. There is no evidence the Branch firm ever told Camacho that it was not going to honor the lien. Camacho may have detrimentally relied on the Branch firm's silence, thinking he had taken sufficient action to protect his interest. *See id.*

### C. Does Camacho's lien have priority over the Branch firm's claim to its fees?

23. The question of whether a first attorney's lien has priority over a second attorney's claim to fees is an issue of first impression in New Mexico. The New Mexico Supreme Court has held that the trial court

did not abuse its equitable powers in determining that an attorney's lien took second place to a judgment obtained by a third party. *Northern Pueblos Enters.*, 98 N.M. at 49, 644 P.2d at 1038; *accord Sunwest Bank*, 112 N.M. at 496, 816 P.2d at 1118 (case remanded to trial court with instructions to determine, among other things, whether, after balancing of equities, a charging lien or a set-off took priority). We hold that the trial court may also determine priority among attorneys, or apportion the available funds between them.

24. In determining priorities or an apportionment, the trial court may consider the reasonableness of each attorney's fee. *See Northern Pueblos Enters.*, 98 N.M. at 49, 644 P.2d at 1038. The court should evaluate the amount of work actually done as well as the degree of risk incurred. It may also consider the conduct of each attorney, such as the reasonableness of Camacho's action in turning over the entire $22,000 to Rhodes and the Branch firm's silence (even if these activities fail to rise to the level of waiver or estoppel). Further, it may consider each attorney's omissions. Camacho could have formally intervened in Rhodes' lawsuit against the Martinezes, but did not. The Branch firm could have requested a ruling from the court as to the validity of Camacho's lien before settling Rhodes' personal injury claim and disbursing the proceeds, but did not. Rhodes and the Martinezes did not even alert the trial court to the existence of the lien in the record when they submitted their joint motion for dismissal. All of these factors should be considered in deciding whether to enforce Camacho's lien against the funds remaining from the personal injury settlement and now held in trust, and if so, to what extent.

## V. Attorney's fees on appeal

25. The Branch firm requests attorney's fees for defending a frivolous appeal. The request is denied as the appeal is not frivolous.

## CONCLUSION

26. We hold that Camacho's charging lien reaches proceeds of the personal injury portion of the lawsuit pursuant to the provisions of the Rhodes–Camacho agreement. We reverse the decision of the trial court and remand for further evidentiary proceedings so the trial court can now determine whether equity will enforce Camacho's lien and if so, in what amount.

27. IT IS SO ORDERED.

HARTZ and BOSSON, JJ., concur.