1998-NMCA-079

959 P.2d 973

Carol M. CHERPELIS, Plaintiff,

v.

Barbara Jane CHERPELIS, Defendant/Third–Party Plaintiff,

v.

George CHERPELIS, Third–Party Defendant,

MILLER, STRATVERT, TORGERSON & SCHLENKER, P.A. Claimant/Appellant,

v.

Carol M. CHERPELIS, Respondent/Appellee.

No. 18304.

Court of Appeals of New Mexico.

May 7, 1998.

David H. Thomas, III, Dean G. Constantine, Miller, Stratvert & Torgerson, P.A., Albuquerque, for Claimant/Appellant.

George Cherpelis, Scottsdale, AZ, for Appellee.

*OPINION*

BUSTAMANTE, Judge.

■ {1} The law firm of Miller, Stratvert and Torgerson (Miller) appeals the district court's decision denying it a charging lien on monies currently deposited in the district court's registry. The sole issue raised is whether the common-law attorney's charging lien, as first recognized and described in New Mexico in *Prichard v. Fulmer*, 22 N.M. 134, 159 P. 39 (1916), may be asserted when there is no explicit provision for a lien in the attorney's agreement with the client. As explained below, this equitable right remains intact. Consequently, we reverse the decision below and remand for reconsideration.

*FACTUAL AND PROCEDURAL BACKGROUND*

{2} Barbara Jane and George Cherpelis were divorced in 1982. Pursuant to the divorce decree, George was obligated to pay spousal support to Barbara Jane until her remarriage or the death of either party. *See Cherpelis v. Cherpelis*, 1996–NMCA–037, ¶ 2, 121 N.M. 500, 914 P.2d 637. In early 1988 George married Carol, and later that year, they constructed a marital residence (the Hideaway Property). In 1991, upon George's motion, his spousal support obligation was reduced from $2000 to $650 a month. *Id.* ¶ 3, 121 N.M. 500, 914 P.2d 637. During 1992, George conveyed his interest in the Hideaway Property to Carol as her sole and separate property. In 1993, Barbara Jane recorded two notices on the Hideaway Property claiming liens to secure payment of George's future spousal support. In late 1994, Carol entered into a contract to sell the Hideaway Property to a third party. A title commitment was obtained, but final issuance of the policy was contingent on release of Barbara Jane's purported liens.

{3} On December 20, 1994, Carol executed a written letter of engagement, hiring the Miller firm to represent her in obtaining a release of the liens. The engagement contemplated institution of an action, if required, to quiet title to the Hideaway Property and to obtain damages for slander of title if Barbara Jane refused to release the liens. In the engagement letter, Carol agreed to pay Miller on a time and expense basis, with payment to be made within two weeks after receipt of billing statements.

{4} Barbara Jane refused to voluntarily release the liens, and on January 20, 1995, Miller filed an amended complaint on Carol's behalf asserting claims to quiet title, for slander of title, and for prima facie tort. Miller also filed a motion for a preliminary injunction to immediately release the liens so that the pending sale could proceed. During the injunction hearing on February 3, 1995, the district court ordered release of the liens, thus permitting the sale of the property, on the condition that $20,000 be deposited into the court's registry pending further action in the matter. On February 13, 1995, Barbara

Jane filed her counterclaim seeking to impose a judicial lien on the Hideaway Property and seeking damages, alleging that George had fraudulently transferred the property to Carol. Additionally, Barbara Jane filed a third-party complaint against George arising from the same asserted fraudulent transfer.

{5} Eventually, after a series of claim amendments, motions, and corresponding responses, the parties agreed to settle their dispute. Their agreement provided for: (1) termination of all of George's future spousal support obligations; (2) release of all pending claims with the parties to bear their costs and attorney fees; and (3) release of the funds in the court registry to Carol. At the time of the settlement, Carol's accumulated balance for services rendered by Miller was more than $26,000. When Carol did not bring her account balance current or make other arrangements, Miller requested a charging lien against the funds on deposit with the court.

## STANDARD OF REVIEW

■ {6} The district court took no evidence in connection with Miller's lien claim and expressly dismissed it as a matter of law. Consequently, as the parties agree, we treat the dismissal as a failure to state a claim upon which relief can be granted. *See* Rule 1–012(B)(6) NMRA 1998; *cf. Prichard,* 22 N.M. at 138, 159 P. at 40 (court proceeded to analyze attorney's charging lien after trial court sustained demurrer); *Thompson v. Montgomery & Andrews, P.A.,* 112 N.M. 463, 464, 816 P.2d 532, 533 (Ct.App.1991) (trial court reviewed legal sufficiency of complaint alleging enforceable charging lien). Accordingly, the question we review here is whether the motion for a charging lien stated a claim for relief. *See Blea v. City of Espanola,* 117 N.M. 217, 218, 870 P.2d 755, 756 (Ct.App. 1994).

## DISCUSSION

{7} As we have recently noted, states vary in their recognition and treatment of attorney's charging liens. *See Robinson–Vargo v. Funyak,* 1997–NMCA–095, ¶ 8, 123 N.M. 822, 945 P.2d 1040. Attorney charging liens are generally allowed as a right created by statute or common law. *See, e.g., Frazee*

*v. Frazee,* 104 Idaho 463, 660 P.2d 928, 929–30 (1983) (attorney's charging lien did not exist at common law but has been codified in Idaho Code § 3–205 (1911)); *see generally* 7A C.J.S. *Attorney & Client* §§ 357, 359 at 715 (1980) ("While there are cases holding that the charging lien of an attorney does not exist, such [a] lien now exists in most jurisdictions either by statute or by virtue of judicial decision.") (footnotes omitted); D.E. Evins, Annotation, *Attorney's Charging Lien Upon Continuing Payments to Which Client Becomes Entitled as Result of Litigation,* 99 A.L.R.2d 451, 451 (1965) ("Generally speaking, an attorney has a special or charging lien for his services to secure compensation for obtaining a judgment, decree, or award for his client ...."). Additionally, at least one state has taken the position that the right to an attorney's charging lien can be created by contract even when it does not exist by statute or in common-law. *See Wagner v. Sariotti,* 56 Cal.App.2d 693, 133 P.2d 430, 432 (1943) ("In this state an attorney has neither a retaining nor charging lien for compensation on a judgment secured by his services in the absence of a contract containing an agreement for a lien."); *cf. Prichard,* 22 N.M. at 140–41, 159 P. at 41 (in the absence of statutory or common-law right, attorney recovered fees and costs only upon theories of quantum meruit or by special agreement).

{8} In New Mexico, the attorney's charging lien "has its origin in the common law, and is governed by equitable principles." *Northern Pueblos Enters. v. Montgomery,* 98 N.M 47, 49, 644 P.2d 1036, 1038 (1982) (citing *Prichard,* 22 N.M. at 139, 159 P. at 40); *accord Rhodes v. Martinez,* 1996–NMCA–096, ¶ 5, 122 N.M. 439, 925 P.2d 1201. It is an attorney's right to "recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same." *Prichard,* 22 N.M. at 140, 159 P. at 41. The attorney's charging lien is intended "to protect attorneys against dishonest clients, who, utilizing the services of the attorney to establish and enable them to enforce their claims against their debtors, sought to evade pay-

ment for the services which enabled them to recover their demand." *Id.* at 145, 159 P. at 42; *see also Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc.,* 295 N.W.2d 514, 516 (Minn.1980) ("Historically the general theory behind the charging lien was that a successful plaintiff should not be permitted the whole of any judgment secured by the services of his attorney without paying for those services.").

{9}    In New Mexico, the traditional attorney's charging lien is solely an equitable remedy administered by the court in its discretion. *See Prichard,* 22 N.M. at 145, 159 P. at 42 ("The court, having control of its own process, would not permit the client to have the benefit thereof without paying the attorney, because in equity and good conscience he should compensate the attorney . . . .") (cited with approval in *Northern Pueblos Enters.,* 98 N.M. at 49, 644 P.2d at 1038); *Hilburn v. Brodhead,* 79 N.M. 460, 464, 444 P.2d 971, 975 (1968) ("[A] court of equity has power to meet the problem presented, and to fashion a proper remedy to accomplish a just and proper result . . . ."); *cf. Sanders v. Rosenberg,* 1997–NMSC–002, ¶ 10, 122 N.M. 692, 930 P.2d 1144 (" 'The touchstone of equity is that it is flexible; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties. . . . [T]he comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command.' " (citation omitted)).

{10}    Here, Carol contends this appeal is easily resolved by our Supreme Court's decision in *Sunwest Bank of Roswell, N.A. v. Miller's Performance Warehouse, Inc.,* 112 N.M. 492, 816 P.2d 1114 (1991). Carol's position is that in *Sunwest Bank,* the Court fundamentally changed the nature of the charging lien, transforming it into a right based only on contract when it stated that the "attorney-client contract must provide that an attorney's charging lien can attach to the client's award." 112 N.M. at 496, 816 P.2d at 1118. Carol reasons that since her engagement agreement with Miller did not

expressly provide for a lien, Miller's claim must fail.

{11}    At first blush, *Sunwest Bank* appears to be directly on point. A careful comparison of the issues presented for review, however, supports the idea that *Sunwest Bank* did not intend to supplant the long recognized equitable attorney lien in favor of a purely contract-based right. *Cf. Sims v. Sims,* 1996–NMSC–078, ¶ 29, 122 N.M. 618, 930 P.2d 153 ("There is no requirement that the creation of a statutory remedy at law for a particular type of claim will automatically supplant an equitable remedy that addresses the same claim.").

{12}    *Sunwest Bank* originated as a mortgage foreclosure action. The debtors counterclaimed, contending their debt should be reduced or voided because the bank had acted wrongfully in its various collection efforts. The debtors agreed to pay their attorneys a contingency fee on "any money or property paid, received or collected by compromise or otherwise in satisfaction or settlement of any such claims." 112 N.M. at 495 n. 1, 816 P.2d at 1117 n. 1. The district court granted the bank summary judgment on its claims in the amount of $388,080, plus interest. After trial on the debtors' counterclaims, a jury awarded them $82,000. *Id.* at 493, 816 P.2d at 1115. The debtors' attorneys filed a Notice of Attorney's Charging Lien for $48,449— forty percent of debtors' judgment. The district court found that the attorney's lien took precedence over any set-off rights the bank might have under the judgment and directed the bank to pay debtors' attorneys in accordance with the lien. *Id.* at 493–49, 816 P.2d at 1115–16.

{13}    The Court in *Sunwest Bank* was not faced with questions regarding expansion or contraction of the traditional attorney's charging lien. Rather, the Court was presented squarely with two different, though related issues. The first dealt with whether a lien would attach in the absence of "actual pecuniary recovery." *Id.* at 493, 816 P.2d at 1115. This issue arose because the debtors received no payment as such. The debtors' judgment was smaller than the bank's judgment and subject to the bank's set-off right. *Sunwest Bank,* 112 N.M. at 493, 816 P.2d at

1115. Second, the Court was required to determine whether an attorney's charging lien took "priority over a set-off of judgments awarded the attorney's client and an adverse party." *Id.* The analysis in *Sunwest Bank* related primarily to the priority determination. *See id.* at 495–96, 816 P.2d at 1117–18; *see generally,* Jay M. Zitter, Annotation, *Priority Between Attorney's Charging Lien Against Judgment and Opposing Party's Right of Setoff Against Same Judgment,* 27 A.L.R.5th 764, 785 (1995) (reporting the *Sunwest* case in full and discussing issue of setoff versus priority).

{14} However, in the Court's view, the priority issue was initially dependent on whether the attorney had any claim under the attorney-client agreement to what the client actually received; that is, a judgment subject to set-off by a larger judgment, rather than an award of actual money or property. If the attorney-client agreement provided a fee based only on money or property actually received, and no fee if some other, non-pecuniary award resulted from the representation, then no lien could be asserted because no fee had been earned. This focus explains the Court's observation and concern that:

> The contingency fee agreement between [the debtors] and their counsel appears to clearly anticipate an actual monetary recovery by the [debtors] before their attorneys would collect a fee.... However, if the trial court determines that the agreement is ambiguous, and the contract could be understood to include payment of attorney fees upon a judgment, then the trial court will balance the equities between the attorney's charging lien and the set-off."

112 N.M. at 495–96, 816 P.2d at 1117–18 (footnote omitted).

{15} Thus the Court was concerned with whether the attorney was due a fee under the terms of the contract. If a fee had been earned and was due, an equitable balancing of the attorney's lien and the right of set-off would be required. If no fee had been earned, no lien could be asserted and no balancing was required. The Court was not concerned with the existence of an explicit statement in the attorney-client contract re-

serving a lien. We are bolstered in this conclusion by the Court's favorable citation to *Miller v. Miller,* 83 S.D. 227, 157 N.W.2d 537, 541 (1968), recognizing that either an express or implied contract for fees is necessary for the existence of a lien. It can be easily contemplated that an implied contract for fees would not expressly provide for a lien. The pertinent inquiry is whether the attorney has earned a fee under the contract. If so, the attorney's lien is available as a means of collection.

{16} In this regard, *Sunwest Bank* is not unlike the Court's decision in *Forrest Currell Lumber Co. v. Thomas,* 82 N.M. 789, 790, 487 P.2d 491, 492 (1971). In *Forrest Currell Lumber Co.,* the plaintiff and intervenor had a $129,952 judgment entered in their favor. 82 N.M. at 789, 487 P.2d at 491. Defendants successfully counterclaimed against intervenor "because of certain illegal acts." *Id.* The attorney representing the defendants filed a motion requesting an attorney's charging lien on the $13,000 judgment. Intervenor responded, arguing it was entitled to a set-off in the full amount. The Court, recognizing the "modern trend is to protect the attorney against such a set-off," held the attorney's charging lien to be superior. *Id.* at 790, 487 P.2d at 492. It based its determination, in part, on the existence of a valid contract for fees. There is no mention in *Forrest Currell Lumber Co.* of any requirement that the contract explicitly assert a lien against the client's recovery.

{17} The *Sunwest Bank* decision did not make the charging lien a matter of pure contract, and it did not abrogate the long-established equitable right of an attorney to seek the aid of the Court to get paid for his or her services. *See Sunwest Bank,* 112 N.M. at 494, 816 P.2d at 1116 (citing *Prichard* with approval). To the extent that *Rhodes,* 1996–NMCA–096, ¶ 8, 122 N.M. 439, 925 P.2d 1201, suggests that a fee agreement must include an explicit charging lien provision before it will be effective, it is hereby overruled.

{18} Having determined that the attorney's common-law right to impose a charging lien survives, we now address Carol's contention that the monies deposited in

the Court's registry are not "recovered funds." In support, Carol relies on *Albuquerque National Bank v. Albuquerque Ranch Estates, Inc.*, 101 N.M. 656, 687 P.2d 91 (1984), which reiterates the requirement that a charging lien can be imposed only on funds recovered through the attorney's efforts.

{19}   Here, the district court found that monies were recovered through the efforts of the Miller firm. Our review of the record indicates that the funds were deposited pursuant to the district court's order so that the sale of the Hideaway Property could proceed. The total represented an amount which was arguably sufficient to cover Barbara Jane's alleged liens for spousal support which were still in dispute. At this point, Carol was not entitled to the funds. Her right to the funds did not arise until the final *underlying* settlement was reached. Thus, the deposited funds are clearly different from the real estate payments in *Albuquerque National Bank* because in that case there existed "no valid recovery fund upon which an attorney's charging lien could be imposed." *Id.* at 657, 687 P.2d at 92. Accordingly, we determine that the district court did not err in determining that the monies were " 'recovered funds' within the meaning of applicable New Mexico case authorities establishing the requirements for assertion and attachment of an attorney's charging lien."

## CONCLUSION

{20}   Miller's request to obtain the assistance of the court to be paid its fees and costs from a fund recovered by its efforts states an appropriate claim for relief. *See Prichard*, 22 N.M. at 140, 159 P. at 40–41. While it would have been a better practice for the engagement agreement to contain an explicit attorney's charging lien provision (*e.g.*, for priority purposes), its absence is not fatal to Miller's claim. Accordingly, we reverse the decision of the district court and remand. The district court must now decide whether, and to what extent, if any, Miller is entitled to "the equitable interference of [the] court" in collecting its fees. *See id.; Northern Pueblos Enters.*, 98 N.M. at 49, 644 P.2d at 1038 ("Because a court exercises its equitable powers in enforcing an attorney's charging lien, it may inquire into the reasonableness of the asserted fee for the purposes of enforcing the lien.").

{21}   **IT IS SO ORDERED.**

DONNELLY and WECHSLER, JJ., concur.