1999-NMCA-058

977 P.2d 1034

**Virginia Lee SOWDER, Petitioner–Appellee,**

v.

**Elmer J. SOWDER, Jr., Respondent–Appellant,**

**Walther Associates, Real Party in Interest–Appellant.**

No. 18,970.

Court of Appeals of New Mexico.

March 24, 1999.

Jane Bloom Yohalem, Santa Fe, for Petitioner–Appellee.

Elmer J. Sowder, Jr., Las Vegas, for Respondent–Appellant Pro–Se.

David L. Walther, Walther Associates, Santa Fe, for Real Party in Interest–Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} Walther Associates (Walther) appeals from the trial court's release of an attorney charging lien Walther sought to assert over the former marital residence of Virginia Sowder (Virginia) and Elmer Sowder (Elmer). After an evidentiary hearing, the trial court concluded that Walther did not give Virginia proper notice of the lien and ordered it released. We affirm.

## BACKGROUND

{2} The underlying cause of action in this matter is the divorce between Virginia and Elmer, both of whom are in their seventies. Virginia filed for divorce in January 1995, seeking an end to nearly fifty-two years of marriage. The case was contentious throughout. Virginia accused Elmer of infidelity and financial misdealing. Elmer admitted to having amassed considerable gambling debts while living in Las Vegas, Nevada, apart from Virginia. In addition, the trial court entered several orders to show cause, temporary restraining orders, injunctions, and ultimately a contempt order against Elmer for his failure to cooperate. Elmer and Virginia were able to agree on terms for a Marital Settlement Agreement (MSA), although, as evidenced by some of the trial court's orders, Elmer was less than cooperative in carrying out those terms.

{3} Among the MSA's terms was a provision that Elmer would pay Virginia half of the equity in their Los Alamos home (approximately $81,000), in exchange for which Virginia would quitclaim to Elmer all her right, title, and interest in the property. Elmer was also to pay down the mortgage on the home by $50,000, and to allow Virginia to lease back the property for the remainder of her life. During the lease term, Elmer was to "take all steps necessary to protect [the property] from creditors' claims, including, without limit, discharge of such claims against [the property] in full and clearing of title in the real property records within a reasonable time after he discovers or should have discovered such claims." Elmer's failure to "promptly pay and discharge all real estate taxes, liens, construction/materialman's liens, and so forth on the property" would constitute a default under the MSA. A default by Elmer would give Virginia "a right to cure the default and assume the ownership of [the property]."

{4} Elmer hired Walther to represent him in the divorce. Walther's retainer agreement with Elmer included a clause that provided: "Our fee is secured by a charging lien on your share of the property division, pending payment, and we may withdraw from your case for non-payment of fees." As Elmer's attorney, Walther assisted in preparing the MSA. After the court approved the M.S.A. Elmer allegedly quit paying Walther for its services. Despite his failure to pay, Walther continued to represent Elmer during the time when the trial court entered several orders against Elmer for his refusal to abide by the terms of the MSA. According to Walther, Elmer accumulated a balance of $43,550.01 in legal fees between June 13, 1996 (when Elmer received money from a trust account and paid his bills to date), and February 18, 1997.

{5} Walther sent Elmer a letter on February 18, 1997, advising him of the outstanding balance. The letter also informed Elmer that Walther intended to withdraw as counsel, and it reminded Elmer of Virginia's rights under the M.S.A. in the event of a default. Finally, the letter indicated that Walther had filed a charging lien on the property it recovered for Elmer in the divorce, pursuant to the lien provision of the retainer agreement. Walther had filed the Notice of Charging Lien in the County Clerk's Office in Los Alamos a week earlier, on February 11, 1997. Walther withdrew from the case on March 10, 1997.

{6} Elmer did nothing to satisfy his debt to Walther. Instead, he told Virginia he was in default under the M.S.A. (without telling her what the default was) and quitclaimed the property to her on July 21, 1997. Virginia discovered the lien only after taking title to the property. She moved the trial court for release of the lien in October 1997. The trial court granted Virginia's motion and Walther appealed.

## DISCUSSION

{7} Walther argues, quite simply, that the trial court was wrong as a matter of law in concluding that its lien was invalid. We review questions of law de novo. *See Western Bank v. Malooly* 119 N.M. 743, 748, 895 P.2d 265, 270 (Ct.App.1995).

{8} This case requires us to clarify further the law of attorney charging liens in New Mexico. Attorneys have all the usual tools available to creditors to protect against defaults by their clients. For example, they can obtain mortgages on client real property or security interests in client personal property. Also, if a client fails to pay what is due, the attorney can file a claim in court

and obtain a judgment lien. In addition, an attorney may assert a charging lien, a unique method of protecting attorneys. As the following discussion will show, however, an attorney charging lien functions in a very limited manner. When the circumstances supporting a charging lien are not present, an attorney must resort to the remedies available to other creditors.

 {9} Although in many states attorney charging liens are governed by statute, in New Mexico they have their origin in common law and are governed by equitable principles. *See Cherpelis v. Cherpelis,* 1998–NMCA–079, ¶ 8, 125 N.M. 248, 959 P.2d 973. "The attorney's charging lien is intended 'to protect attorneys against dishonest clients, who, utilizing the services of the attorney to establish and enable them to enforce their claims against their debtors, sought to evade payment for the services which enabled them to recover their demand.'" *Id.* (quoting *Prichard v. Fulmer,* 22 N.M. 134, 145, 159 P. 39, 42 (1916)). Or, "[t]o put it more bluntly, it was created for the protection of attorneys against the knavery of their clients." 2 Robert L. Rossi, *Attorneys' Fees* § 12:13, at 248 (2d ed.1995). Courts in New Mexico have defined the attorney charging lien as

> the right of an attorney or solicitor to recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same, and also to prevent or set aside assignments or settlements made in fraud of his right.

*Prichard,* 22 N.M. at 140, 159 P. at 41; *accord Northern Pueblos Enters. v. Montgomery,* 98 N.M. 47, 49, 644 P.2d 1036, 1038 (1982).

 {10} In New Mexico, there are four requirements for the imposition of an attorney charging lien. A charging lien first requires a valid contract, either express or implied, between attorney and client. *See Sunwest Bank of Roswell, N.A. v. Miller's Performance Warehouse, Inc.,* 112 N.M. 492, 495, 816 P.2d 1114, 1117 (1991). The contract need not "explicitly assert a lien against the client's recovery," however. *Cherpelis,*

1998–NMCA–079, 125 N.M. 248, 959 P.2d 973.

{11} The second requirement is that there be a fund "recovered by" the attorney. *See Albuquerque Nat'l Bank v. Albuquerque Ranch Estates, Inc.,* 101 N.M. 656, 657, 687 P.2d 91, 92 (1984); *Cherpelis,* 1998–NMCA–079, ¶ 20, 125 N.M. 248, 959 P.2d 973; *cf. Glickman v. Scherer,* 566 So.2d 574, 575 (Fla. Dist.Ct.App.1990) (per curiam) ("It is not enough ... to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services."). Similarly, as one commentator has stated: "An attorney's charging lien attaches to the fruits of the attorney's skill and labor. Thus, the lien will attach to the proceeds of a judgment obtained by the attorney. If the attorney's work produces no fruit, then the attorney has no lien." 7 Am.Jur.2d *Attorneys at Law* § 357 (1997) (footnotes omitted).

 {12} The third requirement is "that clear and unequivocal notice be given of the intention to assert a lien against any judgment or recovery so that all parties concerned are aware that no voluntary payment should be made without protecting the attorney's claim of fees and costs." *Thompson v. Montgomery & Andrews, P.A.,* 112 N.M. 463, 466, 816 P.2d 532, 535 (Ct.App.1991). Notice must be given to "appropriate parties," which include opposing counsel and opposing counsel's client, as well as the client of the attorney asserting the lien. *See id.* The trial court concluded that Walther's notice to Virginia was inadequate, and on that basis ordered release of the lien: "In my view, Walther's charging lien is invalid because an appropriate party—Virginia Sowder—was never given clear and unequivocal notice as the law requires."

{13} We do not decide here, however, whether notice was proper. We agree with the trial court that the lien was invalid; as we discuss below, we hold it was invalid because the fourth requirement of a charging lien—timely assertion—was not met. While we decide on a basis different from that of the trial court, we perceive no unfairness to the parties because they addressed the issue of timely assertion of the lien both here and

below. *See In re Drummond,* 1997–NMCA–094, ¶ 12, 123 N.M. 727, 945 P.2d 457 ("[W]e may affirm the [trial] court's decision if it is right for any reason and affirming on a different ground would not be unfair to the appellant .").

{14} The fourth requirement of a valid charging lien is that assertion of the lien be timely. As our Supreme Court indicated in *Prichard,* a charging lien is waived if the attorney fails to give notice of his intention to assert it before the proceeds of the judgment have been distributed: " 'The attorney waives his lien by his acquiescence in a satisfaction of the judgment by the payment of money or the transfer of property to his client, and he cannot afterwards enforce his lien upon such money or property, but must look to his client alone for his compensation.' " 22 N.M. at 146, 159 P. at 43 (quoting 1 Leonard A. Jones, *A Treatise on the Law of Liens* § 231, at 162 (2d ed. 1894)). This requirement supplements the requirement in *Thompson* that notice be given in a particular manner. If an attorney seeks to assert a lien, but does so only after distribution of the proceeds of the judgment, his notice, even if given to all appropriate parties, is too late and the lien is lost.

{15} That is what happened here. Although Walther mentioned a lien in its retainer agreement, that did nothing more than indicate an intent to assert a charging lien in the event that Walther recovered property for Elmer and Elmer refused to pay Walther for its services. Indeed, as we have already noted, "[a]n attorney's charging lien attaches to the fruits of the attorney's skill and labor." 7 Am.Jur.2d *Attorneys at Law* § 357; *see also Albuquerque Nat'l Bank,* 101 N.M. at 657, 687 P.2d at 92 (indicating a charging lien requires a recovery fund); *Cherpelis,* 1998–NMCA–079, ¶ 18, 125 N.M. 248, 959 P.2d 973 (same). Pursuant to the terms of the MSA, Virginia quitclaimed her interest in the home to Elmer on July 12, 1996. But Walther waited until February 11, 1997, to assert its lien. This was long after entry of the order approving the MSA, but more importantly, it was several months after distribution of the property under the terms of the MSA. Walther therefore waived its lien by asserting it too late. *See Prich-*

*ard,* 22 N.M. at 146, 159 P. at 43 ("One who has been dilatory, and has permitted the client to collect the judgment, without objection or protest, or seeking aid from the court, cannot invoke the aid of a court of equity. . . .").

{16} We are not unsympathetic to Walther. But we agree that a charging lien " 'is a peculiar lien, to be enforced by peculiar methods.' " *Prichard,* 22 N.M. at 148, 159 P. at 43 (quoting *Goodrich v. McDonald,* 112 N.Y. 157, 19 N.E. 649, 651 (1889)). Walther may not recover its fees from Elmer via a charging lien because it failed to follow the "peculiar methods" of enforcing a charging lien. It is free, however, to seek recovery of its fees through another method. *See Northern Pueblos Enters.,* 98 N.M. at 49, 644 P.2d at 1038.

{17} We address one final issue briefly. During oral argument before this Court Walther suggested that, by virtue of the written lien language in the retainer letter, its agreement with Elmer was more in the nature of a mortgage than a lien. We disagree. "New Mexico has never departed from the early definition of a 'mortgage' as a 'conveyance of real estate, or some interest therein, defeasible upon the payment of money or the performance of some other condition.' " *Kuntsman v. Guaranteed Equities, Inc.,* 105 N.M. 49, 50, 728 P.2d 459, 460 (1986) (quoting *Palmer v. City of Albuquerque,* 19 N.M. 285, 298, 142 P. 929, 933 (1914)). As such, a valid mortgage requires a description sufficient to identify the land or interest the mortgage conveys, and will be upheld unless the description is too vague to make identification possible. *See Komadina v. Edmondson,* 81 N.M. 467, 469, 468 P.2d 632, 634 (1970). Description can be by reference to some other document containing a description of the affected property. *See* NMSA 1978, § 47–1–46 (1943). However, Walther's retainer agreement refers only to "[Elmer's] share of the property division," and not to any property in particular, or to any other document describing property. Without a sufficient property description the agreement simply cannot be a mortgage.

*CONCLUSION*

{18} Walther asserted its charging lien too late by doing so after distribution of the property under the terms of the MSA. The trial court was correct in releasing the lien. And because there was no lien, Virginia had no obligation to Walther under the MSA. We therefore affirm.

{19} **IT IS SO ORDERED.**

HARRIS L. HARTZ, Judge, and JAMES J. WECHSLER, Judge, concur.